Phillip G. ORTWEIN et al.,
Plaintiffs-Appellees,

v.

Cecil MACKEY, Individually and as President of the University of South Florida, et al., Defendants-Appellants.

No. 73–2437.

United States Court of Appeals,
Fifth Circuit.

April 21, 1975.

Lawrence J. Robinson, Sarasota, Fla., Steven G. Wenzel, Gen. Counsel, Univ. of South Florida, Tampa, Fla., for defendants-appellants.

Richard H. Frank, P. A., Tampa, Fla., Michael H. Gottesman, Washington, D. C., for plaintiffs-appellees.

Before BROWN, Chief Judge, and TUTTLE and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

On this appeal we review a district court order granting to the plaintiff-appellee, Phillip Ortwein, an injunction restraining the defendant-appellant Mackey, President of the University of South Florida, located at Tampa, Florida, from refusing to renew Ortwein's employment contract on grounds of "non-performance" without (i) according plaintiff a pre-termination hearing in accordance with principles of due process, and (ii) allowing plaintiff's counsel to participate actively in the conduct of that hearing. Ortwein v. Mackey, M.D.Fla.1973, 358 F.Supp. 705, 715. Since the facts are detailed in the district court opinion, a brief recital of them suffices here.

The appellee was a non-tenured member of the faculty at the University of South Florida. He was served notice by letter on March 3, 1969, that he was not being considered for a permanent position at the University. This letter was the result of a 4–3 vote against recommending tenure by the Tenure Committee of the University's Physical Education Division, in which the plaintiff was employed as a tennis instructor.[1] The plaintiff asked Dr. Bowers, the Director of the Physical Education Division, for an explanation of the denial of an offer to renew his contract of employment. Dr. Bowers in a memorandum of December 10, 1970 to Dr. Harris W. Dean, the then acting president of the University, listed the following reasons:

(1) Mr. Ortwein was employed to teach in the areas of functional physical education and the activity program. He was taken out of the functional program owing to lack of performance.

(2) Over the years Mr. Ortwein's contribution has been limited to the area of tennis. His performance in this activity appears to be adequate; however, the staffing of division programs cannot afford such a specific contribution.

---

1. The Tenure Committee was composed of tenured faculty in the Physical Education Division. That committee's action was advisory only. The University's "Staff Handbook" (1970 ed.) provided at p. 25: "Upon nomination of the President, review by the Chancellor, and approval by the Board, tenure will be granted." Thus, the Board of Regents of the state University System holds the ultimate power to grant or to deny tenure, with the Chancellor (the chief administrative officer of the University System) exercising intermediate review.

(3) When Mr. Ortwein was employed in 1966 he had been out of the main stream of physical education for several years. His awareness of advances in the profession is unknown. There is no indication evidenced or suggested by him concerning his contributions to the profession outside the realm of tennis classes.

(4) The entire Physical Education Division faculty was recently given the opportunity to vote on retaining or terminating Mr. Ortwein. The vote was three for and nine against his continued employment. Three faculty members abstained.

In the course of further discussions with University officials, the plaintiff was informed that the reasons for the decision not to renew his contract were that plaintiff's performance had been "inadequate" and "incompetent".

Plaintiff denied the substance of reasons (1), (2) and (3) given by Dr. Bowers to Dr. Dean for the refusal to renew his contract, and sought review of the decision of the Tenure Committee by the Academic Relations Committee, whose function was to oversee intra-faculty and faculty-administration relations. A group of faculty members from this committee was empanelled to hear the plaintiff's complaint. Shortly before the scheduled hearing date of November 17, 1971, disagreement arose over the question whether plaintiff's counsel or personal representative would be entitled under the applicable procedural rules to participate actively in the hearing.[2] When this issue was resolved against active participation in accordance with the extant rules, plaintiff refused to proceed before the Committee. He abandoned further pursuit of administrative remedies and filed suit in the court below for injunctive relief. The requested relief was granted and, as far as the record reflects, plaintiff continues in the employ of the University under the terms of that injunction.

On appeal the University argues *inter alia* that the court below erred in two significant respects: (i) in finding that the University's decision not to renew the plaintiff's contract infringed the plaintiff's liberty interest, Board of Regents v. Roth, 1972, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, thereby calling into play the requirement for a hearing; and (ii) in requiring that plaintiff's counsel be allowed to participate actively at the required hearing.

The case was orally argued before this panel on March 20, 1974. We withheld determination on the merits pending the decision by this court on rehearing en banc of Sims v. Fox, 5 Cir. 1974, 492 F.2d 1088. The court en banc on December 30, 1974, reversed the panel opinion, Sims v. Fox, 5 Cir. 1974, 505 F.2d 857. We thereafter invited and received from the parties supplemental briefs concerning the impact of Sims v. Fox on the instant appeal. We proceed with its disposition as taught by the holding of that case.

In *Sims* we held "as basic propositions" applying to cases where infringement of a liberty interest is asserted:

(1) that liberty is not infringed by the *mere presence* of derogatory information in *confidential* files and (2) the government has not infringed "liberty" unless it perpetuates *untrue* charges. 505 F.2d at 864.

We found that Sims' liberty interest had not been infringed by his honorable discharge from the Air Force as a result of his pleading nolo contendere to charges

---

**2.** At the time of Ortwein's request for a hearing the Academic Relations Committee was apparently an unseasoned body. The Committee submitted copies of its proposed procedural rules to the plaintiff for his review and comment. Except for suggesting one minor change, plaintiff, at the time assisted by a professor of constitutional law at the University, lodged no objection to the proposed rules. The rule regarding the assistance of counsel in pertinent part read:

> The parties involved . . . will have the right to legal counsel in an advisory capacity. Such counsel will not have the right to make statements concerning his client nor to examine or cross-examine witnesses.

of indecent exposure in the Georgia state courts. In reaching this result, we emphasized two factors: (i) Sims' failure to contest the indecent exposure allegations which ultimately were the basis for his discharge, and (ii) the fact that Air Force regulations specifically proscribe dissemination of information regarding the reasons for Sims' discharge to anyone other than Sims himself. *Id.* at 860.

Viewed against this backdrop the instant case while in part distinguishable is also in part indistinguishable. Here, the plaintiff has steadfastly asserted the falsity of the charges of non-performance and incompetence made the basis of the decision not to offer him tenure, as distinguished from Sims' failure to contest the Georgia charges. But as to whether there has been or is likely to be communication to the public of the reasons underlying the plaintiff's termination, Ortwein's case closely parallels the situation in *Sims.*

■ The clear holding of *Sims* is that "the *mere presence* of derogatory information in *confidential* files" does not infringe an individual's liberty interest. A corollary of this holding is the principle that infringement of one's liberty interest can be found only where

the governmental agency has made or is likely to make the allegedly stigmatizing charges public "in any official or intentional manner, other than in connection with the defense of [related legal] action." Kaprelian v. Texas Woman's University, 5 Cir. 1975, 509 F.2d 133, at p. 139 (1975).

■ Here there has been no allegation that the University has made public the reasons underlying its decision not to renew the plaintiff's employment contract.[3] As to the possibility of future disclosure the situation again is closely analogous to that in Sims v. Fox.

In the interim since the district court issued its opinion, the Board of Regents of the University System, pursuant to Florida Statutes, § 239.78[4] has promulgated a regulation, Board of Regents Operating Manual, p. 2–13J, effective November 20, 1973, requiring that the contents of faculty evaluation files as to individual teachers be kept confidential.[5] There is hence slight likelihood of danger to the plaintiff's liberty interest by University officials in the indefinite future.[6] Sims v. Fox disposes of Ortwein's contention that the conditions of his non-retention infringed his liberty interest.

---

**3.** Counsel for the University stated at oral argument that no one outside the University has ever been made aware of the reasons for the non-renewal of the plaintiff's contract.

**4.** The statute provides:

239.78 Records of personnel.—Regulations of the Florida board of regents may prescribe the content and custody of limited access records which an institution in the state university system may maintain on its employees. Such records shall be limited to information reflecting evaluations of employee performance and shall be open to inspection only by the employee and by officials of the institution who are responsible for supervision of the employee. Except as required for use by the president in the discharge of his official responsibilities, the custodian of limited access employee records may release information from such records only upon authorization, in writing, from the employee or upon order of a court of competent jurisdiction.

**5.** The regulation provides:

The contents of the faculty evaluation file shall be confidential and shall not be disclosed

except to the affected faculty member and those whose duties require access to the file in accordance with each university's evaluation procedures.

**6.** Plaintiff's counsel in post-argument submission contends that the Board of Regents regulation, note 5 supra, is distinguishable from the regulation which we found to give adequate protection against disclosure in Sims v. Fox, 5 Cir. 1974, 505 F.2d 857, 860. There the Air Force regulation in question proscribed "the narrative reasons for separation", while the Board of Regents regulation here prohibits disclosure of the "contents of the faculty evaluation file." Counsel argues that the regulation here is less protective than the one in *Sims* because it does not prevent disclosure of the "narrative reasons" for the non-renewal of plaintiff's contract. We are unpersuaded. The obvious intent and meaning of the Regents' regulation here under scrutiny is to require that the "contents" (in the broad sense) of the faculty evaluation file remain confidential. Our view is that narrative disclosure is prohibited as well as disclosure of the actual reports in the file or of copies thereof.

The plaintiff-appellee additionally argues that the issuance of the injunction by the trial court should be sustained on the basis of protection of his property interest in continued employment at the University, Board of Regents v. Roth, supra. The trial court for reasons explicated at pages 710–711 of 358 F.Supp., held that the plaintiff-appellee had no property interest in continued employment. Its holding was based upon a careful examination of the facts before it, considered in the light of the teachings of Board of Regents v. Roth, supra, and of Perry v. Sindermann, 1972, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570. We agree with the trial court that no property interest is involved.

It follows from what we have said that Mr. Ortwein is not entitled upon federal constitutional grounds to a hearing at which he may contest the reasons made the basis for his discharge.[7] The injunction and order of the district court are vacated and set aside, and that court is directed upon remand to dismiss the complaint.

Reversed and remanded.

---

7. We pretermit discussion of the additional questions posed by the appeal: (i) whether the discharge for "non-performance" was stigmatizing and (ii) whether, assuming *arguendo* the necessity for a due process hearing, plaintiff would be entitled to the active assistance of counsel at that hearing.