Johny **WALKER**, Plaintiff-Appellant,

v.

Clifford L. **ALEXANDER**, Secretary of the Army, et al., Defendants-Appellees.

No. 76–1714.

United States Court of Appeals, Fifth Circuit.

March 9, 1978.

Rehearing Denied April 3, 1978.

Russell A. Ortmayer, Miami, Fla., for plaintiff-appellant.

Robert W. Rust, U. S. Atty., C. Wesley G. Currier, Don R. Boswell, Asst. U. S. Attys., Miami, Fla., for defendants-appellees.

Before TUTTLE, CLARK and RONEY, Circuit Judges.

TUTTLE, Circuit Judge:

This is an effort by a military officer to set aside an order separating him from the military service on the dual grounds that the procedures followed violated applicable government regulations and that the action of the defendant officials deprived him of a property or liberty right without due process. But for the fact that the plaintiff here is a federally recognized National Guard officer and not an officer in the regular Air Force or the regular Army, the questions raised by his appeal have been largely settled in three prior cases decided by this court. *See Ortwein v. Mackey*, 511 F.2d 696 (5th Cir. 1975), construing *Sims v. Fox*, 505 F.2d 857 (5th Cir. 1974) (en banc) and *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971).

Lt. Col. Walker, the appellant, was a federally recognized National Guard officer who served in the capacity of an executive officer of a field artillery group in the Florida National Guard. In addition to that status, he was employed as a National Guard technician, a full-time civilian position, salaried by the federal government. His tenure in this civilian position was conditioned upon his maintaining his active military status as a member of a state National Guard. 32 U.S.C. § 709.

In April 1974 a selective retention board (hereinafter board) was appointed by the Adjutant General of the State of Florida, as provided by National Guard Regulations 635–102.[1] Regulations do not permit ap-

---

1. These regulations provide:

(1) Purpose. This regulation prescribes policies and procedures for the establishment and conduct of selection boards used in the Army National Guard program for selective retention of officers and warrant officers beyond 20 years of qualifying service for retired pay . . . . .

. . . . .

pearance in person or representation before the board by counsel. The board makes its recommendation to the convening authority, the Adjutant General of the state, whose decision, according to regulations, is final.

Walker was duly notified that his name would be among those considered by the board and he was notified of his opportunity to apply for retention and to submit such written information as he might desire the board to consider. The board recommended non-retention of Lt. Col. Walker. This action was concurred in by the Adjutant General, who thereupon notified Walker that he would be separated from the service. Before the date of separation, Walker filed his complaint in the district court, seeking injunctive relief against his senior officers, and later against the United States government. After a hearing, the trial court granted a preliminary injunction on June 20, 1974 to restrain the defendants from terminating Walker's commission until the merits of the controversy could be resolved. Upon motions made by the defendants, the court dissolved the preliminary injunction on November 26, 1974, noting that recovery of damages would adequately compensate the plaintiff in the event of ultimate success on the merits of the controversy. Subsequently, following discovery by both parties and upon consideration of the parties' affidavits and depositions and the applicable Army and National Guard regulations, the trial court granted a summary judgment in favor of the defendants.

Since we deal here with the grant of a motion for summary judgment, we have no issues of fact to resolve, nor do the defendants contend that plaintiff failed to pursue his administrative remedies before filing his complaint in the district court.

The main thrust of the appellant's complaint here is that the board deprived him of both property and liberty rights without due process, in violation of the Fifth Amendment to the Constitution. A secondary complaint is that, even if such conduct did not violate Walker's constitutional rights, the board made its determination in a manner that violated certain provisions of the applicable regulations.

■ Walker seeks to bolster his claim to a property right by emphasizing the fact that the position he held as a civilian employee at a grade of GS–11, and from which he could not be discharged except for cause, was nevertheless held by him only so long as he maintained his status as a member of the Florida National Guard. This undoubtedly made his potential monetary loss greater than the salary losses suffered by the officers in the United States Air Force in *Sims v. Fox, supra,* and *Mindes v. Seaman, supra.* This fact, however, does not change the quality of the right or the expectancy of the officer to continue in his position for purposes of demonstrating the existence of a property right under the standards of *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and *Sims v. Fox, supra.* In the latter case, this court authoritatively held that no property right exists in favor of a career officer in the United States Air Force so as to entitle him to a due process hearing before his separation. Here, Walker accepted a civilian position with full notice that his tenure depended upon maintaining his status as a National Guard officer in the State of Florida. 32 U.S.C. 709(e)(1). That tenure, in turn, was at all times conditioned by the terms of National Guard regulations. *Cf. Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). One such regulation is 635–102, which provides that after having served 20

(4) Program Goals. A continuing program of selective retention is essential to provide for progression of qualified officers at proper intervals in their careers. The broad goals of the Army National Guard program for selective retention are—
(a) Insuring that only the most capable officers are retained beyond 20 years of qualifying service for assignment to the comparatively few higher level command and staff positions.
(b) Providing career incentive.
(c) Insuring an opportunity for advancement to the higher grades at the peak years of an officer's effectiveness.

years, after which time he would be eligible for retirement benefits upon reaching age 60, he would be considered by a selective retention board, which would determine which of those officers scrutinized were to be retained under the policies of the "up or out" regulations. *See* n.1, *supra*. The Supreme Court has held that the provisions of § 709(e)(1) form a valid basis for discontinuing a technician's employment without proof of "cause" under § 709(e)(3). *Tennessee v. Dunlap*, 426 U.S. 312, 96 S.Ct. 2099, 48 L.Ed.2d 660 (1976). We conclude, therefore, that Lt. Col. Walker had no property right in his retention as a commissioned officer in the Florida National Guard.

■ Lt. Col. Walker also argues that he was denied due process because the board had before it defamatory information concerning him which was allegedly untrue. This defamatory information, appearing as an entry on Walker's current Officer's Efficiency Report (OER), stated that "an example of poor judgment and conduct was displayed [by Walker] in the misappropriation of lumber scraps for personal use."[2] The board had before it OERs for the current and preceding 14 years.

The trial court held the retention of this information in Walker's personnel files and the alleged reliance by the board on this information as a partial basis for terminating his service did not deprive him of a liberty interest. This decision was based on this court's holding en banc in the *Sims* case, *supra*. In *Sims*, this court held:

(1) that liberty is not infringed by the *mere presence* of derogatory information in *confidential* files and (2) the government has not infringed "liberty" unless it perpetuates untrue charges. Thus, in the absence of a denial of the truthfulness of the allegedly offending material, there is

no necessity for a hearing; there is no disputed fact requiring resolution as the result of a hearing.

505 F.2d at 864. (emphasis in original)

The appellant argues that his case is distinguishable from *Sims* in that he has consistently challenged the accuracy of the OER entry that he "misappropriated" the government's property, whereas the quoted language from *Sims* indicates that the court based its decision in part upon the fact that Sims did not challenge the facts upon which his dismissal was based. This court, however, has subsequently construed the *Sims* holding in *Ortwein v. Mackey*, *supra*. There we stated:

Viewed against this backdrop the instant case while in part distinguishable is also in part indistinguishable. Here, the plaintiff has steadfastly asserted the falsity of the charges of non-performance and incompetence made the basis of the decision not to offer him tenure, as distinguished from Sims' failure to contest the Georgia charges. But as to whether there has been or is likely to be communication to the public of the reasons underlying the plaintiff's termination, Ortwein's case closely parallels the situation in *Sims*.

The clear holding of *Sims* is that "the *mere presence* of derogatory information in *confidential* files" does not infringe an individual's liberty interest. A corollary of this holding is the principle that infringement of one's liberty interest can be found only where the governmental agency has made or is likely to make the allegedly stigmatizing charges public "in any official or intentional manner, other than in connection with the defense of [related legal] action." *Kaprelian v. Texas Woman's University*, 5 Cir. 1975, 509 F.2d 133, at p. 139 (1975).

---

**2.** As will be developed further in discussing the alleged breach of National Guard regulations, the record shows that Walker admitted using government lumber "scraps" which, however, he contended did not have a value in excess of $10 to $15 as contrasted to the $75 asserted by the Adjutant General of the state. He also claimed that he had done nothing wrong, since the scraps were just that, and no more. His

final admission states that he had taken 68 pieces of scrap lumber including 21 pieces of 2″ × 4″s more than six feet long. At one stage of the investigation of the lumber matter Walker said: "As far as the materials, I am alleged to have taken to use in remodelling a cabin to be used by me personally—to this charge I could be guilty."

Here there has been no allegation that the University has made public the reasons underlying its decision not to renew the plaintiff's employment contract. As to the possibility of future disclosure the situation again is closely analogous to that in *Sims v. Fox.*

511 F.2d at 699 (footnote omitted) (emphasis in original).

█ Even though it is doubtful whether the dispute as to the accuracy of the use of the word "misappropriate" amounts to a dispute as to the underlying facts in view of Walker's admissions that he had used these materials and that he "could be guilty," *see* n.2, *supra,* we need not resolve this question because in *Ortwein* we dealt squarely with the two factors which had been alternative bases for supporting the decision in *Sims. Ortwein* extended the *Sims* concept of liberty interest to a case in which the defamatory material is disputed by the affected person. We agree with the trial court that the provisions of 5 U.S.C. § 552a(b) foreclose improper disclosure of Walker's OER. We believe that there is no greater danger of dissemination of the unsavory entry than was the case in *Sims.* Under this standard we are compelled to hold that no liberty interest of the appellant was infringed.

We next turn to appellant's complaint that his separation was at least partially brought about by conduct of his superiors which did not conform to appropriate Army or National Guard regulations. Walker's arguments all relate to the appearance on his current OER of the statement about his poor judgment and conduct as displayed "in the misappropriation of lumber scraps for personal use." Walker first mounts an attack on the propriety of this statement appearing in the OER by saying that it reflected the result of an investigation of his

conduct ordered by the state Adjutant General, as to which Walker now says in his brief to this court: " 'None' of the appropriate Army regulation, 15–C, was complied with." The difficulty with this argument is that no such allegation was made in his complaint or in his amended complaint and, therefore, on a motion for summary judgment these matters were not put in issue.[3] The defendants are not required to submit affidavits supporting their motion for summary judgment as to facts not alleged.

█ Moreover, defendants call attention to the fact that Walker made no objection to the handling of the investigation; that he received full notice of it and responded to the criticisms in the basic communication; that the report of the investigation was sent to him through military channels, including his immediate commanding officer, Col. De Marcellus; that the matter was terminated when he received a "severe reprimand" by the Adjutant General, who directed that the reprimand "is imposed as an administrative measure and *not* as punishment under AR 15;" that this reprimand was placed in his technician file but not in his official military records file; and that finally Walker had acknowledged that he had used the lumber "scraps" after making several inconsistent statements as to the quantity.[4] At no time during the investigation or subsequent thereto until after the filing of the complaint and amended complaint did the appellant take any exception to the manner in which the investigation had been conducted. If there was a violation of the regulations concerning the conduct of the investigation, it is clear that Walker waived the right to contest it. The court cannot permit a party, who received full notice of an investigation and failed to complain about the manner in which it was

---

**3.** The appellees do not comment on this procedural point, but since their brief does deal with the matter, it was necessary to scan the record closely to determine whether there is any merit in the appellant's contention that there remained an issue of fact whether the investigation which resulted in the adverse comment in his OER was illegally conducted.

**4.** The record disclosed that Walker had stated under oath to the investigating officer that "as for the statement I used these materials to improve or build a cabin, this is completely false and has no basis of truth." Thereafter, he stated he had used no more than 6 pieces of plywood and finally he conceded that he had taken 68 pieces and also that he "could be guilty." See n. 2, *supra.*

conducted, to take his chances with the board and then attack the validity of the inquiry when adverse action is taken.

It should be borne in mind that no reference to the reprimand appears in Walker's OER, in the indorsement by his unit commander, or in any materials shown to the board which decided his fate.

Walker makes the further contention that information concerning the admitted personal use of government property should not have been contained in his OER. He claims that the inclusion of the comment as to the "misappropriation" arose from the investigation and that under appropriate army regulations no reference should be made to it. Cl, AR 623–105, ¶ 10–5 b provides:

Reference will not be made to punitive or administrative action taken against an officer or to an investigation concerning an officer unless such action or investigation has been processed to completion, adjudicated, and final action taken within the rated period. Should the officer be absolved, comments pertaining to the incident will not be included in the report. The intent of this restriction is not to preclude or discourage the inclusion by rating officials of verified derogatory information on evaluation reports. It is intended only to preclude the permanent documentation in an officer's official military evaluation file of charges or incidents of which he may later be absolved, and which, if included, would be unjustly prejudicial to him. . . .

Of course, there is no "reference . . to punitive or administrative action taken against [Walker]" or "to an investigation concerning [him]" in the record before the court. There is reference to the underlying facts that brought about the investigation and resulted in the administrative repri-

mand. However, it is perfectly clear that the investigation had been fully completed and had resulted in the formal reprimand by the state Adjutant General within the current rating period. Thus, even if the regulation should be read to forbid the use of *information* which may have been derived from an *investigation*, it was not excludable under the terms of this regulation.

■ The final contention by the appellant respecting a failure to comply with regulations concerning the selective retention board is that Lt. Col. Walker's immediate commanding officer, Col. De Marcellus, to whom Walker had submitted his application for retention for transmission "through channels," had placed an unfavorable recommendation on the letter as a "1st endorsement." [5] The appellant claims that this comment made by his commanding officer as the communication was passed through channels violated NG Reg. 635–1029(e)4, which provides that unsolicited communications of an unfavorable nature will not be given to the board.[6]

The defendants contend that the endorsement is not an unsolicited communication within the meaning of this regulation. They claim that the endorsement was required under the terms of FNG circular II–15 and AGO circular II–49.[7] The trial court adopted this construction. In any event, it is clear that Army regulation C6, AR 340–15, in general requires that regular military correspondence from a lower headquarters to a higher headquarters be sent "through channels," and this requires that each higher echelon of command forward the basic communication which it receives after placing an endorsement thereon. There is no dispute here but that Walker elected to send his letter requesting retention "through channels," in that he sub-

---

**5.** Col. De Marcellus forwarded the communication to his next superior officer, Gen. Dale, with the following endorsement: "It is not recommended that the retention request of Lt. C. Walker be approved."

**6.** The regulation provides: "Unsolicited communications which contain criticism or reflect upon the character, conduct, or motives of any

officer will not be given to the selection board." NGR 635–1029(e)4.

**7.** Although the parties debate in the briefs the effect of these Florida National Guard circulars, neither has seen fit to include their text in the documents before this court on appeal.

mitted it to his immediate commanding officer, Col. De Marcellus. This officer thereupon wrote the offending endorsement of non-recommendation and forwarded the basic communication to his superior. It is apparent that since Col. Walker chose the channels of communication which normally require the endorsement of the superior officer he cannot now complain that it was handled as prescribed for the ordinary method of forwarding military correspondence. We conclude, as did the trial court, that as to any regulations or circulars brought to our attention and placed in issue by the pleadings, there was no remaining relevant fact issue as to whether regulations had been violated.

We consider that the other matters urged on appeal were adequately dealt with by the trial court and consider them to be without merit.

The judgment is AFFIRMED.