**Hattie F. JAMES, Plaintiff,**

v.

**BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY, ALABAMA, et al., Defendants.**

**Civ. A. No. 78–506–P.**

United States District Court, S. D. Alabama, S. D.

Dec. 28, 1979.

Gregory B. Stein, Mobile, Ala., for plaintiff.

Daniel H. Pike, Mobile, Ala., for defendants.

### OPINION AND ORDER

PITTMAN, Chief Judge.

This is an action for declaratory and injunctive relief, and damages brought under the Fourteenth Amendment to the United States Constitution and under the Civil Rights Act of 1871, 42 U.S.C. § 1983. It is predicated upon alleged violations by the defendants of the plaintiff's rights to substantive and procedural due process guaranteed her by the Fourteenth Amendment. Such violation is alleged to have occurred when certain of the defendants terminated the plaintiff's employment contract before the end of the 1977–78 school year.

Plaintiff's first cause of action alleges that plaintiff had and continues to have a property interest in continued employment as a teacher for the school year 1977–78. Plaintiff alleges in this count that defendants' purported cancellation of her 1977–78 employment contract and suspension or dismissal of her during the term of that contract is violative of her rights to substantive and procedural due process, guaranteed

by the Fourteenth Amendment,[1] in the absence of adequate procedures by which plaintiff could challenge those actions. Plaintiff also alleges that defendants' actions are violative of 42 U.S.C. § 1983.[2]

Plaintiff's second cause of action alleges that she had and continues to have a property interest in continued employment as a teacher on "continuing service status" (or tenure) by virtue of the following actions and omissions of defendants: (1) their failure to give plaintiff a completed copy of her teacher evaluation tenure form and notice that she was not being recommended for tenure at least two months prior to the date she was eligible for tenure (as required by defendants' policy); and (2) their failure to lawfully effect the cancellation of plaintiff's 1977–78 contract and to lawfully terminate plaintiff's employment during that school year, so that plaintiff acquired continuing service status no later than April 9, 1978. Plaintiff alleges in this count that defendants' denial of continued employment to plaintiff as a tenured teacher, without according her the procedures prescribed by statute to contest her dismissal, is violative of plaintiff's rights to substantive and procedural due process guaranteed her by the Fourteenth Amendment. Plaintiff also alleges that defendants' actions are violative of 42 U.S.C. § 1983.

Plaintiff's third cause of action alleges that defendants' actions in making charges of incompetency against her in connection with her suspension and termination seriously damaged her professional and personal reputation, and that defendants' failure and refusal to accord her an adequate hearing to challenge those charges is violative of plaintiff's rights under the Fourteenth Amendment not to be deprived of property or liberty without due process of law.

Plaintiff also alleges that defendants' actions are violative of 42 U.S.C. § 1983.

In addition to the Constitutional provisions and statute cited above, plaintiff brings this action under 28 U.S.C. §§ 1331, 1343(3), 1343(4), 2201, and 2202, and under 42 U.S.C. § 1988.

By way of relief, plaintiff seeks the following: (a) a declaratory judgment that the defendants' unlawful actions complained of herein violate plaintiff's Fourteenth Amendment rights not to be deprived of liberty or property without due process of law and violate plaintiff's rights under 42 U.S.C. § 1983; and (b) an injunction enjoining defendants and those acting in concert with them from: (i) failing to reinstate plaintiff in her teaching position; (ii) failing to recognize and acknowledge plaintiff as a teacher on continuing service status; (iii) failing and refusing to accord plaintiff a hearing to challenge the defendants' serious charges of professional incompetence; and, (iv) failing to make oral and written retractions by the appropriate media of the accusations of professional incompetence heretofore expressed by such defendants, and expunging from plaintiff's personnel file such unfavorable or adverse material; (c) an award of back pay and all other financial benefits plaintiff has lost as a result of defendants' unlawful actions complained of herein; (d) an award of compensatory and punitive damages in the amount of $100,000.00; (e) an award of costs incurred in prosecuting this action, including an award of reasonable attorneys' fees; and (f) such other and further equitable relief as the court deems just and proper.

Defendants contend that plaintiff never obtained a property interest in continued employment as a teacher with the defend-

1. The Due Process Clause of the Fourteenth Amendment provides:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

2. Section 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or us-

age, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

ants in that she never served three consecutive years as a teacher in the Mobile County Public School System as required by Sec. 16–24–3 of the *Code of Alabama* (1975). Because plaintiff's beginning contract date with the system came at a time other than at the end of a completed school year, viz., on April 9, 1975, defendants contend it was necessary to give her notice of non-renewal or cancellation on or before April 9, 1978. Defendants also contend that no substantive or procedural due process rights to which a person in plaintiff's position would be entitled were denied plaintiff, and the suspension of plaintiff during the balance of the 1977–78 school year was made after a hearing at which hearing plaintiff was represented by legal counsel.

## FINDINGS OF FACT

### UNCONTESTED FACTS

Plaintiff Hattie F. James is a citizen of the United States and of the State of Alabama over the age of twenty-one years.

Defendant Board of School Commissioners of Mobile County, Alabama, (School Board) is the general supervisory agency of the public schools of Mobile County. It is empowered to perform executive and administrative functions, including developing and executing certain employment practices and policies, and is responsible for the hiring, retention and termination of teachers for the public schools of Mobile County.

Defendant Dan C. Alexander, Jr., is president of the School Board and is responsible for developing and executing certain employment policies and practices, including the hiring, retention and termination of teachers for the public schools of Mobile County. He is sued individually and in his official capacity as president of the School Board.

Defendants Norman J. Berger, Ruth F. Drago, Homer L. Sessions and Hiram Bosarge are or were at the times pertinent to this action members of the School Board and are (or were) responsible for developing and executing certain employment policies and practices, including the hiring, reten-

tion and termination of teachers for the public schools of Mobile County.

Defendant Richard L. LoDestro was at all times pertinent to this action superintendent for the Mobile County public schools, and in that position participated in the development and execution of certain employment policies and practices including the hiring, retention and termination of teachers for the public schools of Mobile County.

Defendant J. Larry Newton is assistant superintendent for the Mobile County public schools, and has participated in the development and execution of certain employment policies and practices including the hiring, retention and termination of teachers for the public schools of Mobile County.

Plaintiff served under contract as a teacher at Baker School within the Mobile County school system for each of the school years 1975–76, 1976–77, and 1977–78, until she was involuntarily suspended by defendants effective March 30, 1978. Plaintiff began her employment with the defendants under an interim teachers contract at Rosa Lott School with a beginning date of April 9, 1975. Therefore, plaintiff was eligible for continuing service status or tenure no later than April 9, 1978.

Defendants have adopted and utilized a policy or practice by which a teacher who is completing his or her third year of service in the Mobile County School System and is thereby being considered for continuing service status is to be evaluated and given a copy of the evaluation, termed a "teacher evaluation form for tenure," at a time at least two months prior to the date the teacher is eligible for tenure.

Plaintiff was given a copy of her "teacher evaluation form for tenure" on March 10, 1978, less than two months before she was eligible for tenure.

On March 15, 1978, Dr. Lemuel Taylor, assistant superintendent, division of personnel, wrote a letter to plaintiff advising her that a Central Appeals Committee meeting had been scheduled for her for 10:00 a. m. on March 21, 1978, in the Board Conference Room at Barton Academy.

Plaintiff and her attorney, W. Clinton Brown, appeared before the Central Appeals Committee on March 22, 1978.

The defendants' rules of procedure to be followed at Central Appeals Committee meetings are reflected in a document entitled "Procedure for Central Appeals Committee Meetings," dated May 27, 1977, and attached to this Opinion and Order as Exhibit A.

On March 27, 1978, plaintiff received a telephone call from Dr. Lemuel Taylor advising her that the Central Appeals Committee had recommended that she be offered the opportunity to resign her teaching position prior to April 9, 1978 and, in the event she did not choose to resign, the Committee had recommended the non-renewal/cancellation of her contract.

On March 28, 1978, Superintendent LoDestro addressed a letter to the plaintiff advising her of the Central Appeals Committee's decision. Dr. LoDestro also advised plaintiff that the non-renewal of her teaching contract had been placed as an item on the action agenda for the School Board's consideration at the Board Meeting scheduled to be held on March 29, 1978. On March 29, 1978, the non-renewal of the plaintiff's teaching contract came before the Board for a vote and the Board voted to accept the recommendation of the Staff and by unanimous vote the Staff recommendation was accepted.

On April 3, 1978, plaintiff received a letter dated March 30, 1978, from Dr. Lemuel Taylor, assistant superintendent of the Mobile County public schools, advising her of the following: (1) "[b]ased upon the charges brought against you by your principal, you are hereby notified of your immediate suspension . . .;" (2) "based upon Board policy adopted March 29, 1978, your suspension is without pay;" and, (3) "[i]f the charges are not substantiated, back pay will be initiated."

The plaintiff has received all back pay to the end of the term.

Plaintiff received a second letter on April 3, 1978, this one also dated March 30, 1978, and signed by the superintendent of the Mobile County public schools, defendant LoDestro. This letter read as follows:

"Dear Mrs. James:

"Pursuant to the provisions of Title 16, Chapter 24, Section 8 and 9 of the Code of Alabama of 1975, the Board of School Commissioners of Mobile County officially notifies you of the proposed cancellation of your contract for the 1977–78 school year as a teacher unless you should be able to show good and just cause why such act should not be taken. The reasons for the proposed cancellation of your contract are set out as follows:

"The above referred to sections of the Code of Alabama provide for the cancellation of the contract of a teacher on continuing service status for several reasons stated therein, among them being incompetency. Although you ordinarily would attain continuing service status on April 9, 1978 under the provisions of the tenure law, it is the expressed intent of the Board of School Commissioners based upon this proposed cancellation of your contract to disallow you to obtain continuing service status. The basis of the proposed cancellation of your contract is based upon your incompetency, such incompetency consisting of the following instances, namely:

"The recommendation from your principal, Dr. Frank Schneider, of March 9, 1978, indicating your teaching performance was unsatisfactory and that he could not recommend that you continue employment in the Mobile County Public School System for the 1977–78 school year. Your principal indicates that your teaching and job performance are unsatisfactory in the following areas:

"1. Unsatisfactory classroom performance based upon documentation by local administrators and systemwide supervisory personnel following classroom visitations

"2. Failure to use appropriate principles of learning to ensure satisfactory student progress and learning objectives

"3. Failure to provide proper planning and teaching to specifically stated objectives

"4. Failure to fully comply with local school rules, regulations and record keeping directives

"5. Failure to effectively communicate with students to achieve desired learning results

"Documentation relative to your teaching performance was also submitted to substantiate this recommendation. The Central Appeals Committee, upon review of the documentation, concurred in the principal's recommendation that your teaching contract in this school system be cancelled due to incompetency. This constitutes good and just cause for notification to be issued to you of the proposed cancellation of your contract.

"You are hereby notified that the Board of School Commissioners of Mobile County will consider the termination and cancellation of your contract as a teacher in the Mobile County Public School System at the office of the Board of School Commissioners of Mobile County, in the Board Room, Barton Building, 504 Government Street, Mobile, Alabama at 11:30 a. m. on Wednesday, April 26, 1978.

"You may appear at said time and place to contest the said proposed cancellation of your teacher's contract should you wish to so do. In such case, you must file with the Board of School Commissioners of Mobile County, through the Superintendent, not later than five (5) days prior to the date set forth above for the hearing of the matter of your intention to contest said cancellation of your contract. Should you determine to so contest said cancellation, the hearing will be public or private, at your discretion, and you may appear with or without a lawyer, as you

desire, and you will have the right to be heard and to present the testimony of witnesses and any other evidence which may have bearing on the reasons for the proposed cancellation. You will also have the right to cross-examine any witness or witnesses which may appear as proponents of the proposed cancellation of your contract as a teacher.

"IN WITNESS OF ALL OF WHICH, the Board of School Commissioners of Mobile County has caused these presents to be executed and its name affixed hereto by Richard L. LoDestro, as Superintendent of Education, on this 30th day of March, 1978.

BOARD OF SCHOOL COMMISSIONERS OF MOBILE COUNTY
BY    /S/    R. L. LoDestro
RICHARD L. LoDESTRO
SUPERINTENDENT
Send by Registered Mail
Deliver to Addressee Only
Return Receipt Requested
JLN/mg
Copies to:
Mr. Dan C. Alexander, Jr., President
Mrs. Ruth F. Drago, Vice President
Dr. Norman J. Berger, Commissioner
Mr. Hiram C. Bosarge, Commissioner
Mr. Homer L. Sessions, Commissioner
Mr. J. Larry Newton
Dr. Lemuel Taylor
Mr. George E. Stone
Dr. Frank Schneider
Mr. Robert Campbell
Mr. Ed. White
Mr. Dwight Reid
Mr. Clinton Brown" [3]

On or about April 4, 1978, plaintiff, through her attorney, forwarded to defendant LoDestro notice of her intention to appear at the April 28 hearing and contest the cancellation of her contract.

---

**3.** As noted in the second paragraph of the letter, *Code of Alabama* (1975) §§ 16–24–8 and 16–24–9 authorize the cancellation of the contract of a teacher on continuing service status. These statutes, however, do not provide authority for cancelling the employment contract of the plaintiff, a non-tenured teacher. Authority to suspend or dismiss a non-tenured teach-

er, for *inter alia*, incompetency, is provided by *Code of Alabama* (1975) § 16–8–23. In such a situation the court is obligated to protect the non-tenured teacher against the school board's arbitrary or capricious action. *See Robinson v. Jefferson County Bd. of Educ.*, 485 F.2d 1381, 1382, n.1 (5th Cir. 1973).

On April 6, 1978, plaintiff received another letter from defendant LoDestro, dated April 5, 1978, which stated in part, as follows:

"This communication will serve to supersede any previous communications relative to the action of the Mobile County Board of School Commissioners on March 29, 1978 concerning your employment status as a teacher in the Mobile County Public School System.

"The Board, at the March 29, 1978 Board meeting, took official action to non-renew your contract as a teacher in the Mobile County Public School System . . . [sic]

"Therefore, this communication will serve as official notice upon you of the non-renewal of your contract with the Mobile County Public School System and there will be not [sic] further communication from this office relative to the matter. You will be paid the remainder of your 1977–78 salary as provided by your contract which was nonrenewed on March 29, 1978 by the Board. In addition, your suspension notice by the Personnel Office on March 29, 1978 remains in effect."

On April 11, 1978, plaintiff appealed to the Alabama State Tenure Commission from the action of the defendants cancelling her contract as a teacher.

The only proceeding carried on before the State Tenure Commission was an oral argument on defendants' motion to dismiss the appeal. Plaintiff was not afforded the opportunity to subpoena, present or examine witnesses in any manner, and the only evidence received by the Commission in any form were the documents attached to plaintiff's notice of appeal and defendants' motion to dismiss.

On May 17, 1978, the Alabama State Tenure Commission found that it did not have jurisdiction over the appeal instituted by plaintiff.

### FURTHER FINDINGS BY THE COURT

Of the twelve persons who received copies of LoDestro's March 30 letter, the first seven are identified above, Stone and Schneider are administrative employees of the defendant School Board, Campbell, White and Reid were counsel to the defendants, Brown to the plaintiff.

The transcript of plaintiff's appearance before the Central Appeals Committee on March 22, 1978, reveals that at the beginning of the proceeding, the following rules of procedure were read into the record by Dr. Lemuel Taylor:

"I would like to read briefly the ground rules for this meeting and to proceed then with the specific charges that are leveled against Mrs. James.

At the Beginning (sic) of the conference the following grounds (sic) rules will be in effect: The assistant superintendent of Personnel will state the basis for non-renewal of contract in a summary fashion. The principal or administrator will provide the opportunity of providing additional, verbal or written documentation. The Central Appeals Committee will question employees on the basis for non-renewal of contract and documentation presented. Any comment the advisor desires to make will be directed to the ears of the employee and not to the Committee. Any questions, comments, responses from the employee, principal or administrator shall be directed to the committee and not (sic) each other. The employee is premitted (sic) one five minutes recess during the hearing to discuss concerns with your legal representative or your advisor. At any point during the conference you may call a hault (sic) and say I want a conference. The employee may refuse to answer any question or refuse to provide a clarifiction (sic) to the Central Appeals Committee. However, the employee is reminded that a decision will be made by the Committee on the basis of available information should you decide not to answer questions. A Hearing maybe (sic) terminated immediately after warning for failure to adhere to ground rules and procedures and a maximum of time for each Hearing is one and one half hours. At the end of the Conference the employee will be notified that

a written decision will be forwarded in the next few days. A tape recording is now being made of the conference as a part of the official record. I will then go briefly to the charges as outlined by Dr. Schneider against Mrs. James."

Plaintiff's attorney, at that time W. Clinton Brown, had, on several prior occasions, "advised" teachers appearing before the Central Appeals Committee and was familiar with the committee's rules of procedure. Although he was aware that the hearing could be abruptly terminated if he failed to adhere to the committee's rules of procedure, Mr. Brown made several—some quite lengthy—comments to the committee in violation of the committee rule that he should address his comments to plaintiff and not the committee. But it should be noted that Mr. Brown pointed out to the committee that his client had not been furnished legible copies of the documents supporting the charges against plaintiff. Neither plaintiff nor Mr. Brown were permitted to present witnesses in defense of the charges against plaintiff. And although members of the committee were permitted to examine plaintiff on the charges lodged against her, neither she nor Mr. Brown were permitted to pose questions to her accusers nor to cross-examine any of the witnesses presented by the School Board in support of its charges.[4]

It is clear that neither the defendants nor the plaintiff regarded the Central Appeals Committee hearing as the final procedural step in the School Board's plan for effecting suspensions or terminations. At the end of the hearing, Dr. Taylor told Mr. Brown that if the committee's decision went against the plaintiff, she would be leaving her position "[p]rior to April 9 and she will have due-process [sic]." Dr. Taylor also promised at the end of the hearing to provide legible copies of the documentation for the charges against plaintiff. Dr. Taylor's letter to the plaintiff of March 30, 1978, advised that if

the charges resulting in plaintiff's suspension were not substantiated—presumably in a hearing—she would receive back pay. Dr. LoDestro's letter of March 30 proposing to cancel plaintiff's 1977–78 contract contained an important condition ("unless you should be able to show good and just cause why such act [the proposed cancellation of plaintiff's contract] should not be taken"). This letter advised plaintiff she could appear at a hearing before the School Board on April 26, 1978, to contest the cancellation of her contract, that such hearing would be public or private at the option of plaintiff, that plaintiff could appear with counsel, present witnesses and other evidence on her behalf, and could cross-examine witnesses testifying in support of the cancellation of her contract.

In addition, Dr. Taylor's March 27, 1978, memorandum to defendant LoDestro recognized that the Central Appeals Committee meeting was not a formal evidentiary hearing when it stated the committee's recommendation to the superintendent:

"It was the decision of the Central Appeals Committee: (1) that Mrs. James will be provided the opportunity of resigning prior to April 9, 1978 *without a formal hearing* and a termination. However, in the event that she would not like to resign prior to April 9, 1978, the committee recommends termination prior to April 9, 1978." (Emphasis added.)

The court further finds that the plaintiff denies the charges of incompetence lodged against her by the defendants and suffered mental distress as a result of the above-described action of the defendants.

To briefly recap: the cancellation by the School Board was set aside. The suspension of her teaching duties continued to the end of the term. The plaintiff was notified before the end of the term that her contract would not be renewed. All back pay for the term was paid to her. The plaintiff did not gain tenure.

---

4. Mr. Brown did address four questions to plaintiff's principal, Dr. Schneider, which Dr. Schneider answered. *See* Transcript of Hearing at 18. This brief colloquy can hardly be described as cross-examination. However, in view of the procedural steps under the School Board plan this court is not holding that this was not permissible had the entire procedural process been followed.

There was no evidence of bad faith or malice.

## CONCLUSIONS OF LAW

### I.

Plaintiff's first cause of action alleges that she had and continues to have a property interest in continuing employment as a teacher for the school year 1977–78. She alleges that defendants' purported cancellation of her 1977–78 employment contract and suspension or dismissal of her during the term of that contract is violative of her Fourteenth Amendment rights to substantive and procedural due process in the absence of adequate procedures by which she could challenge those actions. Plaintiff also alleges defendants' actions are violative of 42 U.S.C. § 1983.

This court has previously considered whether or not a non-tenured teacher has a property interest during the year of her contract of employment sufficient to invoke due process protection guaranteed by the Fourteenth Amendment. In that case, *Bell v. Board of School Commissioners of Mobile County*, 450 F.Supp. 162 (S.D.Ala.1978), the plaintiff school teachers alleged that they were summarily suspended without pay and without due process of law. This court held that the summary suspension without pay did deprive the plaintiffs of property without due process of law. At page 166, the court stated:

Plaintiff Bell, however, was a probationary teacher under Alabama law. It is well settled under Alabama law that a nontenured or probationary teacher does not have a right to be reemployed. *Robinson v. Jefferson County Board of Education*, 485 F.2d 1381 (5th Cir. 1973). Although having no right to reemployment for the 1978–79 school year, Mrs. Bell did have a right to continued employment pursuant to her contract for the 1977–1978 school year, and therefore has a property interest sufficient to invoke due process protection guaranteed by the Fourteenth Amendment.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty or property. The plaintiffs have established sufficient deprivation of a protected interest under the Fourteenth Amendment, and once such protected interest is implicated the right to a prior hearing becomes paramount. [Citing *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548, 556 (1972)] A fundamental principle of due process is that prior to the state terminating a protected property interest, notice and opportunity to be heard must be provided. *Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90, 96 (1971).

This case is different from the *Bell* case in that although the plaintiff was initially suspended without pay, the plaintiff was subsequently paid for the period of suspension and to the end of the school year. She was suspended from, and not returned to, her teaching duties. This court holds that the lack of any financial injury does not deprive the plaintiff of her right to maintain this action for damages because of the denial of the procedural due process in her suspension from teaching duties.

The Supreme Court has held that such mental distress caused by a denial of procedural due process is compensable under 42 U.S.C. § 1983. *Carey v. Piphus*, 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252, 265 (1978). The injury may be purely mental or emotional; concurrent physical injury need not occur. *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979).

Mental or emotional distress must be proven to support an award of damages other than nominal damages. *Jones v. Diamond*, 594 F.2d 997, 1021 (5th Cir. 1979); *Newman v. Board of Education*, 594 F.2d 299 (2d Cir. 1979); *Burt v. Abel*, 585 F.2d 613 (4th Cir. 1978).

The plaintiff is not entitled to punitive or exemplary damages. The plaintiff has not proven malice or bad faith on the part of the Board or its members. This proof is required for punitive damages.

*Huntley v. Community School Board*, 579 F.2d 738 (2d Cir. 1978); *Gore v. Turner*, 563 F.2d 159 (5th Cir. 1977).

It must now be determined whether or not the Central Appeals Committee proceedings provided the due process to which the plaintiff was entitled. *Thurston v. Dekle*, 531 F.2d 1264, 1272 (5th Cir. 1976), held:

"Once created, the employment property interest may not be taken away without due process."

The Fifth Circuit in 1977 held:

"This Circuit has established four requirements necessary to afford minimal due process to a teacher; viz.

(a) He be advised of the cause or causes for his termination in sufficient detail to fairly enable him to show any error that may exist;

(b) He be advised of the names and the nature of the testimony of witnesses against him;

(c) At a reasonable time after such advice, he must be accorded a meaningful opportunity to be heard in his own defense; and

(d) That hearing should be before a tribunal that both possesses some academic expertise and has an apparent impartiality toward the charges. *Ferguson v. Thomas*, [430 F.2d 852 (5th Cir. 1970)]."

*Stewart v. Bailey*, 556 F.2d 281, 285 (5th Cir. 1977).

The evidence in this case was that on March 20, 1978, the copies of the charges against the plaintiff were illegible. The plaintiff could not be expected to point out errors in the charges which she could not read. *Stewart's* first requirement was not met.

At this meeting the plaintiff was not allowed to offer witnesses, to have witnesses cross-examined, nor to have her attorney participate except to advise her. (*See* footnote 4, *supra*.)

A second requirement of *Stewart*, that the employee "must be accorded a meaningful opportunity to be heard" was not met.

■ It is clear from the evidence that the defendants did not think the Appeals Committee meeting standing alone afforded due process. The defendants' procedure provided several steps of which the Appeals Committee meeting was a middle level step to be followed by an evidentiary hearing as the final step. The court concludes that the defendants did not provide the plaintiff with procedural due process when they suspended her from her teaching duties.[5]

■ Not all of the mental distress claimed by the plaintiff was the result of the inadequate procedural due process. Most of it was caused by the non-renewal of her contract and the charge of incompetence. The plaintiff is entitled to recover only for the mental and emotional distress caused by the denial of procedural due process. *Carey, supra*. The plaintiff is entitled to compensatory damages for the mental and emotional distress which she suffered as a result of her suspension from teaching duties in the amount of $200.00.

The plaintiff is entitled to attorneys fees with regard to her award for mental and emotional distress. 42 U.S.C. § 1988; *see Morrow v. Dillard*, 580 F.2d 1284, 1296 (5th Cir. 1978). The amount of the attorneys fee will be determined at a later date.

It would serve no useful purpose to require the defendants to provide the plaintiff with an adequate due process hearing in view of the other conclusions by the court in this case.

## II.

In her second count, plaintiff sets out two alternative theories. First she asserts that the failure of defendants to lawfully cancel her 1977–78 contract and to lawfully terminate her employment during that school year resulted in plaintiff's acquiring contin-

5. This court does not make a determination as to the Appeals Committee proceeding being adequate or inadequate if the other steps in their procedure had been followed. Had all of the steps been followed, it may very well be that the defendants' rules governing the Appeals Committee proceedings are adequate.

uing service status or tenure on April 9, 1978. This assertion is predicated upon the admission of the defendants that if plaintiff had in fact been working under her contract on April 9, 1978, she would have acquired tenure on that date. Plaintiff's second theory is based upon the failure of the defendants to adhere to their policy or practice under which a teacher completing her third year of service—and thereby being considered for tenure—is to receive a copy of her evaluation at least two months prior to the date the teacher is eligible for tenure.

The question posed by plaintiff's first theory is apparently one of first impression. Plaintiff's property interest, if any, in tenured employment is unquestionably one of state law. As the Supreme Court held in *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits. * * * [6]

The starting point for analysis is thus Alabama's Teacher Tenure Statute, *Code of Alabama* (1975), Chapter 24 (hereinafter

*Ala.Code* ). Under *Ala.Code* § 16–24–2 a "teacher in the public schools who shall meet the following requirements shall attain continuing service status. Such teacher shall have served under contract as a teacher in the same county or city school system for three consecutive *school years and* shall thereafter be reemployed in such county or city school system the succeeding *school year.*" (Emphasis added.)

School years in Alabama run from July 1 to June 30. *Id.* § 16–1–1; *Marshall County Board of Education v. State,* 252 Ala. 547, 42 So.2d 24 (1949); *Johnson v. Cain,* 430 F.Supp. 518, 519 (N.D.Ala.1977). Section 16–24–2 appears to plainly state that a teacher employed under contract as a teacher for three consecutive school years in the same school system who is thereafter reemployed in the same school system for the succeeding school year acquires continuing service status or tenure. On its face this statute does not address the attainment of tenure at points during the school year. The court has found no cases [7] in which the point is discussed. It is, however, clearly the understanding of the parties to this action that a teacher may acquire tenure at a point other than at the beginning of a school year.[8] Such an understanding, even if correct, cannot be construed to confer more rights upon the plaintiff than she would have under the statutory scheme for tenure.

---

**6.** *Accord, Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684, 690 (1976); *Moore v. Otero,* 557 F.2d 435, 437 (5th Cir. 1977).

**7.** The Attorney General of Alabama has construed § 16–24–2 to mean that "once a teacher has served under contract in the same . . . school system for three consecutive *years* and is immediately thereafter re-employed in such . . . system, he or she has attained continuing service status, regardless of the time when he or she was originally employed." (Emphasis added.) 1949 *Ala. Att'y Gen. Quarterly Rep.* Vol. 54 at 98. The teacher at whose instance the opinion was sought—unlike the plaintiff in the instant case—had already served more than three years under contract in the same system. The opinion did not address the question of how a school board could deny tenure to a teacher—like this plaintiff—initially employed during a school year and approach-

ing the third anniversary date of her employment.

**8.** For example, in a publication entitled "Mobile County Public Schools, Division of Personnel, Teacher Handbook," the following statements appear at page 22:

> Regardless of the beginning (initial) date of employment, the teacher attains continuing service status three years later if other requirements are met.
>
> * * * * *
>
> A teacher who will become eligible for tenure during the second semester of the school year will be notified of this eligibility date during the first semester. A teacher who will become eligible for tenure during the first semester of the school year will be notified during the second semester of the previous school year.

■ The acquisition of tenure by a teacher is neither automatic nor dependent only upon the amount of time she has served under contract as a teacher. It is true that "[t]he mere extension of a contract to a teacher for the fourth consecutive [school] year automatically confers tenure on the teacher." *Bell v. Board of Sch. Com'rs. of Mobile County, supra,* 450 F.Supp. at 164 n.3. And a teacher is deemed reemployed for the succeeding school year unless notified to the contrary "on or before the last day of the term of the school in which the teacher is employed." *Ala.Code* § 16–24–12. Such notification is effective if authorized beforehand by the school board and the board may refuse reemployment to a nontenured teacher without a hearing. *Robinson v. Jefferson County Bd. of Educ.,* 485 F.2d 1381 (5th Cir. 1973).

■ The court has already held, ante at 715, that the decision of the defendant School Board to suspend or cancel the plaintiff's contract for the 1977–78 school year was unconstitutional. That decision contained another element; the School Board also decided not to rehire the plaintiff for the 1978–79 school year and to deny her tenure. Insofar as the School Board decided not to confer tenure upon the plaintiff by retaining her beyond three calendar years or awarding her a contract for a fourth consecutive school year, the court finds nothing to which plaintiff may object in this forum.

To require the defendants to give the plaintiff a hearing prior to taking action to deny her tenure would be to confer upon the plaintiff rights she would not have had had she first been employed at the start of a school year. The court finds that the defendant School Board complied with the applicable statute, *Ala.Code* § 16–24–12, in notifying the plaintiff of its intent to deny her tenure by not rehiring her. Its discretion in this matter is not reviewable in this court.

■ Plaintiff's alternative theory in Count II is that because defendants failed to comply with their policy of giving two months notice to a teacher not being recommended for tenure, plaintiff acquired an expectancy of continued, tenured employment as a teacher.[9]

■ It is true that a non-tenured teacher may acquire a property interest in continued employment where "the policies and practices of the institution" rise to the level of implied tenure. *Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570, 580 (1972). If plaintiff has such a property interest however, it is rooted in the law of Alabama.[10]

In *State v. Board of Education of Randolph County,* 266 Ala. 588, 98 So.2d 420 (1957), both the plaintiff and the defendant school board were under the mistaken impression that notice of nonrenewal of a teacher's contract should be given to the teacher not later than May 1. When the plaintiff received her notice of nonrenewal on May 7, she filed a mandamus petition to require the defendant school board to restore her to her position. The court refused to grant relief, pointing out that all *Ala.*

9. One possible answer to this contention is that the plaintiff's late receipt of her Teacher Evaluation Form for Tenure could not, in itself, raise or lower the plaintiff's expectation of attaining tenure. The School Board's requirement is not that teachers not being recommended for tenure be evaluated but that all teachers being considered for tenure be evaluated and receive a written report of the evaluation. It is difficult to perceive how the plaintiff could draw the inference that she would be recommended for tenure because she had not been advised to the contrary. Logical though this approach seems, the defendants have not raised the issue and the court will not—in the absence of other evidence as to the practices of the defendants—reach a decision on this basis.

10. At least one court has held that "a non-tenured teacher has no 'expectancy' of continued employment, whatever may be the policies of the institution, where there exists a statutory tenure system." *Ryan v. Aurora City Bd. of Ed.,* 540 F.2d 222, 227 (6th Cir. 1976). The court reasoned that there is no need to supply a tenure system by implication when the state has already prescribed an explicit statutory scheme. Such an expansive holding would seem inappropriate where—as here—state law does supply a narrower rule of decision.

*Code* § 16–24–12 requires is that the teacher receive notice "before the last day of the school term . . . ." 266 Ala. at 589, 98 So.2d at 422.

In a similar vein, Alabama courts have also twice rejected the proposition that a teacher may have a reemployment expectancy based upon the school board's policy of automatically terminating all nontenured teachers at the close of the school year, and rehiring those it later determines it is financially capable of employing. *See Underwood v. Barbour Cty. Bd. of Ed.,* 372 So.2d 22 (Ala.1979); *Hembree v. Jefferson Cty. Bd. of Ed.,* 337 So.2d 9, 11 (Ala.Civ. App.) ("Unfortunately for the Plaintiff, hopes and expectations do not create legal obligations.").

In summary, the court finds that plaintiff's claims grounded in the tenure policies or practices of the defendant School Board do not have any support in Alabama law. If anything, Alabama courts would be hostile to such claims.

The court finds for the defendants on Count II.

### III.

■ Plaintiff's third and final claim is that defendants' failure to accord her an adequate hearing to challenge their charges of incompetency—which charges allegedly seriously damaged plaintiff's professional and personal reputation—violated plaintiff's rights under the Fourteenth Amendment not to be deprived of liberty without due process of law.

In *Dennis v. S. & S. Consolidated Rural H. S. Dist.,* 577 F.2d 338, 342 (5th Cir. 1978), the court held "that stigma to reputation in conjunction with a failure to rehire a nontenured employee states a claim under § 1983 for deprivation of a Fourteenth Amendment liberty interest without due process."

■ It is clear, however, that a non-tenured public employee has no right to a hearing when the nonrenewal of her contract is based upon stigmatizing, even false, allegations which have not been made public by the employer. *Codd v. Velger,* 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Dennis v. S. & S. Consolidated Rural H. S. Dist., supra; Walker v. Alexander,* 569 F.2d 291 (5th Cir. 1978); *Ortwein v. Mackey,* 511 F.2d 696 (5th Cir. 1975); *Kaprelian v. Texas Woman's University,* 509 F.2d 133 (5th Cir. 1975); *Sims v. Fox,* 505 F.2d 857 (5th Cir. 1974). *Contra, Horowitz v. Board of Curators of Univ. of Missouri,* 538 F.2d 1317, *Rehearing and Rehearing En Banc denied,* 542 F.2d 1335 (8th Cir. 1976).

■ The court has found to be a fact, *ante* at 712, that the only persons informed of the charges lodged against plaintiff in connection with her suspension and termination were the School Board members, administrative employees of the School Board, and counsel to the defendants and the plaintiff. School officials and administrators should not be restricted in exchanging views and opinions among themselves concerning teachers and other personnel so long as they do not "go public" or make the exchanges in a public forum. This is in distinct contrast to the facts of *Dennis v. S. & S. Consolidated Rural H. S. Dist., supra,* where the charges against the plaintiff school teacher were aired at a public meeting of the school board. On the contrary, the facts of this case are more akin to those of *Walker v. Alexander, supra,* where the court held, 569 F.2d 291, 294–95:

. . . infringement of one's liberty interest can be found only where the governmental agency has made or is likely to make the allegedly stigmatizing charges public "in any official or intentional manner, other than in connection with the defense of [related legal] action." *Kaprelian v. Texas Woman's University,* 5 Cir. 1975, 509 F.2d 133, at p. 139 (1975).

Here there has been no allegation that the University has made public the reasons underlying its decision not to renew the plaintiff's employment contract.

The court finds for the defendants on Count III.

## IV.

In conclusion, the court holds that the summary suspension of the plaintiff entitles her to compensatory damages in the amount of $200.00, but that the nonrenewal of the plaintiff's contract infringed no property or liberty interest of the plaintiff.

The plaintiff is not entitled to punitive damages in the absence of proof of bad faith or malice. In the spirit of equity, it is the court's judgment that the defendant School Board should remove from its records all references to the termination of plaintiff's contract on the grounds of incompetency.[11] In addition, the plaintiff is entitled to an award of attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. This matter will be taken up at a later hearing.

It is therefore ORDERED, ADJUDGED, and DECREED that judgment is hereby entered in favor of the plaintiff on Count I in the amount of $200.00.

It is further ORDERED, ADJUDGED, and DECREED that the defendants are ordered to expunge from their records all references to the termination of the plaintiff's contract on the ground of incompetence.

Costs are taxed to the defendants.

---

11. *Cf. Brown v. Bathke*, 566 F.2d 588 (8th Cir. 1977); *Irby v. McGowan*, 380 F.Supp. 1024 (S.D.Ala.1974).