629 F.2d 1018
 James E. SWILLEY, Individually and as President of the
Mobile Federation of Teachers, AFL-CIO, Local 777,
Plaintiff-Appellant,
v.
Dan C. ALEXANDER, President, Ruth F. Drago, Dr. Norman
Berger, Hiram Bosarge, Homer Sessions, Individually and in
their Official Capacities as Members of the Board of School
Commissioners of Mobile County, Alabama, et al., Defendants-Appellees.
 No. 78-2352.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 3, 1980.
 
 Augusta E. Wilson, Mobile, Ala., for plaintiff-appellant.
 Frank G. Taylor, Mobile, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before VANCE and GARZA, Circuit Judges, and ALLGOOD,* District Judge.
 GARZA, Circuit Judge:
 
 
 1
 Appellant, James E. Swilley, is a teacher employed by the Mobile County School System in Alabama. He is also President of the Mobile Federation of Teachers, AFL-CIO, Local 777. On July 27, 1977, acting in his capacity as union President, Swilley informed the School Board, in closed session, about an unnamed school principal whose alleged conduct had exposed children to the risk of serious physical harm. The principal had allegedly caused young children to go outdoors for tornado drills during lightning storms and had sent home unattended small children without notifying the children's parents. The School Board told Swilley that they would investigate the allegations and would take proper action.
 
 
 2
 Prior to attending the meeting, Swilley had given members of the news media a press release informing them of the nature of the meeting. Apparently, the story caused a small stew in the area and various members of the School Administration became upset. On August 9, 1977, the Assistant Superintendent, at the direction of the President of the School Board, wrote a letter to Swilley accusing him of releasing the information after the July 27 meeting in disregard of the School Board's supposed request to remain silent on the matter. The letter labeled Swilley as "unethical and unprofessional" and officially reprimanded him in his capacity as an employee of the school system. The letter closes, "any action by you of a similar nature in the future will not be condoned." A copy of the letter was placed in Swilley's personnel file.
 
 
 3
 On August 10, 1977, the School Board, in a public meeting, chastized Swilley, as a school employee, for furnishing the news media with information of the discussion at the July 27 meeting. At this meeting the President of the School Board stated that Swilley's actions had questioned the good character and reputation of all eighty-four principals within the Mobile County School System. He also declared that, "Mr. Swilley will never again attend any executive conference on personnel that we have...." The record is not clear, but it seems that the President of the School Board knew by August 10 that Swilley had issued the press release prior to the July 27 meeting.
 
 
 4
 Swilley filed suit against the School Board alleging violation of his rights under 42 U.S.C. § 1983, & 1985 and the First and Fourteenth Amendments of the United States Constitution. In summary, Swilley's complaint, regarding First Amendment violations, alleged that (1) he has a right to disclose truthful information of public concern, therefore, the School Board had no right to reprimand him; (2) the School Board conspired to inhibit his right to free speech and association, as a union representative and teacher, by publicly humiliating him and damaging his reputation; and (3) the School Board conditioned his continued employment, in the letter of reprimand, upon the relinquishment of his right to speak on matters of public importance regarding the school system. A summary of his due process violations are that; (1) the School Board had no right to reprimand him, because the Board's reprimand was based on incorrect assumptions of fact; (2) the reprimand of him, as a school employee, was wrongful since his actions of informing the news media were performed in his capacity and in furtherance of his duty as a representative of the teacher's union-not as a school employee; (3) the reprimand letter was written and placed in his personnel file at the direction of the President of the School Board, without the concurrence of the School Board and therefore, without legal right; and (4) all of the above was done without notice or hearing in violation of his property and liberty interests guaranteed by the Fourteenth Amendment.
 
 
 5
 The District Court granted appellee's Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief could be granted, however, it is not clear whether the motion was in fact treated as a motion for summary judgment. The District Court seems to have resolved certain disputed issues of fact in his written order. First of all, the Court assumed that Swilley issued the press release after the July 27 meeting. Secondly, the Court assumed that Swilley disobeyed a request by the School Board to withhold release of the information. Thirdly, after drawing conclusions regarding motive and intent of appellees, the District Court found that neither the Assistant Superintendent's letter or the School Board's actions presented a threat of dismissal to Swilley. Lastly, the Court resolved certain matters concerning employer-employee relations and discipline, within the school system, against Swilley.
 
 
 6
 Swilley's first point of error on this appeal is that the District Court erred, under both Rule 12 and Rule 56 of the Federal Rules of Civil Procedure, in assuming certain facts as established[1] and in resolving certain disputed matters against Swilley. Under Rule 12(b)(6) a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Under Rule 56 it is not the district court's function to resolve any genuine issues of material fact, but instead the court should view the record in the light most favorable to the non-moving party. U. S. v. Diebold, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Obviously, the District Court did not view the facts alleged by Swilley, whether material or disputed, as controlling, but instead concluded that Swilley's claims, even if all facts were taken as true, were not of sufficient Constitutional magnitude to be actionable as a matter of law.[2]
 
 
 7
 The District Court recognized the landmark decision in Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), which involved a teacher who sent to a newspaper a letter highly critical of the School Board's and Superintendent's allocation of school funds between the educational and athletic departments. After a hearing, the School Board found that certain statements in the letter were false and unjustifiably impugned the motives, honesty and competence of the Board and school administration and that the statements were disruptive and would tend to foment controversy, conflict and dissention among teachers, administrators, the Board and the taxpayers. In addressing the School Board's interest in regulating speech of its employees, the Supreme Court noted that a balance must be struck between the interests of a teacher, as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. 391 U.S. at 568, 88 S.Ct. at 1734. In applying this approach to Pickering's letter, the Supreme Court found that the criticism of his letter was not personally directed at one with whom Pickering would normally be in daily contact and, therefore, there was no question of maintenance of discipline or disharmony among co-workers. 391 U.S. at 569-70, 88 S.Ct. at 1735. The Supreme Court went on to recognize that teachers are the members of the community most likely to have informed and definite opinions as to issues of public importance concerning operations of schools and that it is essential that they be able to speak out freely without fear of retaliatory dismissal. 391 U.S. at 572, 88 S.Ct. at 1736. The Court concluded that absent proof of false statements knowingly or recklessly made, a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment.[3] 391 U.S. at 574, 88 S.Ct. at 1737.
 
 
 8
 The District Court distinguished the case at hand from Pickering on the grounds that Swilley's remarks were not merely an attack on general financial policy but instead were directed towards an individual and therefore, was not the kind of speech protected under Pickering. We find the distinction drawn between Pickering and Swilley unwarranted. First of all, there is no evidence in the record that the principal, about whom Swilley's comments were directed, was a principal with whom Swilley would have daily or often contact. Secondly, even if the principal had been Swilley's immediate superior, there is no evidence that severe discipline or personality problems would arise to the extent of undermining the employer-employee relationship and the teaching abilities of Swilley. See Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970). Lastly, but most importantly, the District Court failed to recognize that the nature of Swilley's remarks were directed towards the professional conduct of the unnamed principal. In other words, Swilley's press release involved matters of public concern and were not merely a petty personal attack. In our view, the Supreme Court's language regarding the need for superior-subordinate discipline and harmony was intended to prevent public airing of obnoxious personal vendettas which are almost always detrimental to any working relationship. But, the Supreme Court did not intend to stifle discussion on matters of legitimate public importance concerning the professional conduct of school employees. Surely, the physical safety and well-being of our school children is as important an issue for public scrutiny as is the allocation of school funds between athletic and educational programs. Indeed, our experience tells us that the more important the subject matter is to the public, the sharper the reaction will be by those whose conduct may be called into question. It is precisely the probability of oppressive over-reaction by the powers that be which requires our constant vigilance of the First Amendment protections accorded all public employees. Therefore, we hold that the District Court erred in finding Swilley's press release beyond the protection of the First Amendment as a matter of law.
 
 
 9
 Swilley also complains that the District Court erred in holding that he had not been deprived of liberty without due process of law as required by the Fourteenth Amendment.[4] Regarding the placement of the reprimand letter in Swilley's file, the District Court simply concluded that the presence of the letter did not infringe upon Swilley's liberty interests. Similarly, the District Court concluded that the School Board's public criticism of Swilley at its August 10 meeting would not seriously damage Swilley's standing in the community or impose a stigma or disability which would foreclose his freedom to take advantage of other employment opportunities.
 
 
 10
 In Sims v. Fox, 505 F.2d 857 (5th Cir. 1974) (en banc), this Court held that liberty is not infringed by the mere presence of derogatory information in confidential files and that the government has not infringed liberty unless it perpetuates untrue charges. See also Ortwein v. Mackey, 511 F.2d 696 (5th Cir. 1974). In the Sims case there was no question that the derogatory information placed in the plaintiff's personnel file could never be disclosed to anyone but the plaintiff. Also, there was no dispute that the derogatory information was true. To the contrary in this case however, there is absolutely not one shred of evidence in the record showing that the letter of reprimand will be "merely present" and kept "confidential." Moreover, the appellees have conceded that the letter contains false information at least to the extent that Swilley had issued the press release after the July 27 meeting. The District Court's resolution of these factual issues against Swilley, without any evidentiary basis, clearly violates both Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure. Likewise, the District Court's conclusions regarding Swilley's standing in the community and employment opportunities were also without evidentiary basis. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1971); Kaprelian v. Texas Woman's University, 509 F.2d 133 (1975). Accordingly, we hold that the District Court erred in finding, as a matter of law, that Swilley's due process rights had not been violated.
 
 
 11
 REVERSED and REMANDED.
 
 
 
 *
 District Judge for the Northern District of Alabama sitting by designation
 
 
 [1]
 Appellees now admit that Swilley issued the press release prior to the July 27 meeting, not afterwards as found by the District Court
 
 
 [2]
 The District Court relied on Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) for the proposition that § 1983 does not include political subdivisions of a state and found that the School Board could not be sued as an entity. Since the District Court's opinion, the Supreme Court has held otherwise. See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1979)
 
 
 [3]
 The Supreme Court also held that "threat of dismissal from public employment is nonetheless a potent means of inhibiting speech." 391 U.S. at 574, 88 S.Ct. at 1737
 
 
 [4]
 The District Court found that no property interest in Swilley's employment had been violated by the School Board's failure to act as a body rather than as individuals. Whether or not Alabama law requires an elected Board to function as a single entity is a question of State law which the parties will be able to address on remand
 Although Swilley's employment was not terminated, it is quite possible for his property interests to have been affected by both the public reprimand and the reprimand letter. But, because the record is silent as to the hiring policies and employment practices involved, we are unable to address this aspect of the case and confine our holding to violations of Swilley's liberty interests. See Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).