**James Joseph PAINTER, Plaintiff,**

v.

**FEDERAL BUREAU OF INVESTIGA-TION and William Webster, Defendants.**

**Civ. A. No. C81–921A.**

United States District Court, N. D. Georgia, Atlanta Division.

March 31, 1982.

Larry W. Thomason, William F. Rucker, Atlanta, Ga., for plaintiff.

Lawrence E. Gill, Atlanta, Ga., for defendants.

## ORDER

FORRESTER, District Judge.

This action is before the court on defendants' motion to dismiss or for summary judgment. By this action plaintiff seeks reinstatement, damages, back pay, and declaratory judgment for defendants' discharge of plaintiff on October 18, 1977. Plaintiff alleges that the FBI acted arbitrarily and capriciously and in violation of his constitutional rights when it discharged him from his position as special agent, in that the discharge was the result of a conspiracy against the plaintiff which led to

the destruction of his career and in that he was discharged in violation of his right to due process under the Fifth Amendment of the Constitution. Plaintiff predicates jurisdiction in this case on 28 U.S.C. § 1331 (1980); 28 U.S.C. § 1343 (1979); 28 U.S.C. § 1346 (1978). The defendants argue *inter alia* that the complaint fails to state a claim against them, that the court lacks subject matter jurisdiction over plaintiff's claim for damages, and that plaintiff's constitutional rights were not violated by his dismissal from the FBI.

## I.

The uncontroverted facts that appear from the record show that plaintiff was a special agent with the Atlanta office of the FBI and was terminated on October 18, 1977. Thereafter, plaintiff administratively appealed his discharge. A final decision denying his appeal for reinstatement was entered by letter dated April 14, 1981. Plaintiff filed no administrative claim for damages under the Federal Tort Claims Act, but instituted this action on May 14, 1981. According to the uncontroverted statement of Thomas E. Vornberger, a Unit Chief in the Records Management Division of the FBI, no information regarding plaintiff's employment with the FBI has been disclosed since his termination except for a listing to a prospective employer of plaintiff's periods of employment and positions with the FBI and the date of his termination. Vornberger's statement also shows that information regarding the circumstances of plaintiff's termination and, specifically, the inquiry preceding it has been disclosed only in discussions with the United States Attorney's Office in Atlanta, Georgia on November 13–14, 1978 and in documents released to plaintiff's attorney by letter dated January 13, 1978.[1] The FBI agent's handbook in use during plaintiff's employment with the FBI does not contain information or references to tenure or job security with the FBI.

## II.

■ Plaintiff has requested damages for lost earnings and for physical and mental harm suffered from his discharge. The complaint predicates jurisdiction in this action in part on 28 U.S.C. § 1346. Any claim for damages resulting from tortious conduct by the defendants must fail because the plaintiff has not fulfilled the jurisdictional prerequisite set down by Congress that such "[a]n action shall not be instituted ... unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675 (1966); *see McCormick v. United States*, 645 F.2d 299 (5th Cir. 1981); *Adams v. United States*, 615 F.2d 284, 286 (5th Cir. 1980); *Molinar v. United States*, 515 F.2d 246, 248 (5th Cir. 1975); *Campbell v. United States*, 496 F.Supp. 36 (E.D.Tenn. 1980). The complaint fails to aver that the required administrative claim was filed and that there was a final disposition of the administrative claim. The uncontroverted statement by the defendants of facts as to which there is no genuine issue to be tried, supported by the declaration of Unit Chief Vornberger, shows that no administrative claim has been filed. Therefore, this court lacks subject matter jurisdiction over plaintiff's tort claim, and that part of this action is DISMISSED.

## III.

■ The plaintiff also claims deprivation of his right to due process under the Fifth Amendment. It is established that the requirements of due process apply only to the deprivation of property or liberty interests sufficient to invoke the protection of the Constitution. *See Board of Regents of State College v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). Therefore, plaintiff must have established a protectible property or liberty interest implicated in his

---

1. Plaintiff filed a suit in this court under the Freedom of Information Act for the production of documents not released by the FBI. Civil Action No. C78–682A.

discharge from the FBI before any process is "due." [2]

The Constitution does not create any property right in the plaintiff. It only protects such entitlement as he may have by operation of statute or contract, expressed or implied. *Roth* 408 U.S. at 577, 92 S.Ct. at 2709.

All positions in the FBI are excepted by statute from competitive service. 28 U.S.C. § 536 (1966). There is, therefore, no statutory limitation relevant here on the authority of the appointing official, and generally a discharge may be for good cause or no cause so long as it is not based on impermissible considerations such as race, religion, sex, national origin or to prohibit the exercise of a statutory or constitutional right. *See generally Arnett v. Kennedy,* 416 U.S. 134, 152, 94 S.Ct. 1633, 1643, 40 L.Ed.2d 15 (1974); *Perry v. Sindermann,* 408 U.S. 593, 596, 92 S.Ct. 2694, 2696, 33 L.Ed.2d 570 (1972); *Cafeteria Workers v. McElroy,* 367 U.S. 886, 896–98, 81 S.Ct. 1743, 1749–50, 6 L.Ed.2d 1230 (1971); *Vitarelli v. Seaton,* 359 U.S. 535, 538, 79 S.Ct. 968, 971, 3 L.Ed.2d 1012 (1959); 28 U.S.C. § 301 (1966). Plaintiff then has no property interest in his former position created by statute or by formal rule. 5 C.F.R. 752.103(a)(6).

*Dicta* in *Roth, supra,* suggests that an employee of a governmental entity may obtain a property interest in a job by virtue of "existing rules and understandings." *Id.* 408 U.S. at 577, 92 S.Ct. at 2709. In certain circumstances courts have found from rules and understandings, an implied employment contract. *Perry v. Sindermann, supra,* 408

U.S. at 601–02, 92 S.Ct. at 2699–2700. Such contract may be found from evidence of past practice of the employer or from statements in handbooks, letters of appointment, etc. On such evidence an appellate court has found a property right for a non-investigative employee of the FBI. *Ashton v. Civiletti,* 613 F.2d 923 (D.C.Cir.1979).

There is a major doctrinal hurdle in the way of finding a property interest in a job of a federal excepted service employee on the basis of a contract theory which apparently was not brought to the attention of that appellate court. An agent of the United States Government may not charge the public treasury or obligate it beyond the extent of his actual authority to do so as conferred upon him by the Congress. *Federal Crop Insurance Corporation v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); *Prater v. United States,* 612 F.2d 157, 159–60 (5th Cir. 1980); *Dresser Industries, Inc. v. United States,* 596 F.2d 1231 (5th Cir. 1979); *Doe v. Civiletti,* 635 F.2d 88 (2nd Cir. 1980); *Montilla v. United States,* 457 F.2d 978 (Ct.Cl.1972). In a case similar in many respects to the one *sub judice* the Court of Claims held that an excepted service attorney from HUD did not obtain "tenure" under agency policy since Congress had not conferred any such protection by statute or allowed the promulgation of such a rule.[3] *Fiorentione v. United States,* 607 F.2d 963 (Ct.Cl.1979). Any such employment contract implied from rules and understandings not sanctioned by Congress is void. *Sims v. Fox,* 505 F.2d 857, 862 (5th Cir. 1974).[4]

2. There is no claim that the FBI did not follow its own review process, adherence to which is mandated by *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Vitarelli v. Seaton,* 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).

3. Facially it might seem that the Supreme Court has rejected this rule as it applies to property interest arising out of agency regulation. *Service v. Dulles,* 354 U.S. 363, 380, 77 S.Ct. 1152, 1161, 1 L.Ed.2d 1403 (1959). There, the district court had found that the Secretary of State could not bind himself to a dismissal procedure limiting his discretion contrary to the intent of Congress. The Supreme Court

reversed but only because of a finding of implied congressional approval.

4. The limitation on the enforceability of contracts entered into by government agents is supported by several salutory policy considerations. A minor functionary in one branch of government cannot be allowed to accomplish by contract what another branch prohibits or will not authorize. No bureaucrat, major or minor, can be permitted to obligate the full faith and credit of the American public without the approval of their elected representatives.

There is nothing about an employment rights case which should spawn an exception to the general rule. Notwithstanding what may be

For the reasons just given the court is of the opinion that plaintiff has no enforceable property right in his job. Accordingly, as to this point, the complaint fails to state a claim upon which relief may be granted and to the extent that it seeks relief on such property interest it must be dismissed with prejudice.[5]

## IV.

An abridgement of liberty interest has not been directly alleged, but in his brief and by affidavit plaintiff asserts that the mere fact that he was fired from the FBI has harmed him in that it has foreclosed employment in the areas of law enforcement and security, which are the only fields in which plaintiff is specially qualified. He also asserts that the mere fact of his discharge has damaged his reputation as a law enforcement officer, his good name, and his standing in the community. Therefore, the court will address this issue.

It is established law that a liberty interest within the meaning of the Fifth Amendment can be lost when one's "good name, reputation, honor, and community standing" are falsely attacked. *Wisconsin v. Constantineau*, 400 U.S. 433, 436–37, 91 S.Ct. 507, 509–10, 27 L.Ed.2d 515 (1971); *Board of Regents of State College v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

In a series of cases beginning with *Sims v. Fox*, 505 F.2d 857 (5th Cir. 1974), the Fifth Circuit Court of Appeals has developed a standard for determining whether or not one's liberty, as defined by *Roth, supra*, has been denied or infringed upon by a governmental degradation of one's standing in his community or by a governmental

communication of derogatory information to employers. The Court of Appeals held in *Sims* "(1) that liberty is not infringed by the *mere presence* of derogatory information in *confidential* files and (2) that government has not infringed 'liberty' unless it perpetuates *untrue* charges." *Sims* at 864. In *Ortwein v. Mackey*, 511 F.2d 696, 699 (5th Cir. 1975) the Court of Appeals extended the *Sims* standard to cases in which the defamatory material is disputed by the affected person, holding that an infringement of liberty "can only be found where the governmental agency has made or is likely to make the allegedly stigmatizing charges public 'in any official or intentional manner, other than in connection with the defense of [related legal] action.' (Cite omitted.)" *Ortwein* at 699; *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976); *see also Swilley v. Alexander*, 629 F.2d 1018, 1021–22 (5th Cir. 1980); *Walker v. Alexander*, 569 F.2d 291, 294–95 (5th Cir. 1978).

The court is satisfied that, as a matter of law, plaintiff's liberty interest has not been denied or infringed. The plaintiff here does not contest the truthfulness of the charges which led to his discharge. But even assuming that the charges against plaintiff were untrue, a necessary element of the *Sims* standard is not met in that plaintiff has not alleged that the derogatory information has been communicated to others. In fact, the uncontroverted statement of Vornberger and the defendant's statement of material facts as to which there is no genuine issue to be tried show that there has been no dissemination of derogatory information to any of plaintiff's employers, prospective employers or other

thought to be tolerable limitations on discretion in personnel action in most agencies or positions in government, it seems imminently clear that there are some instances where special considerations of discipline, flexibility, teamwork, public confidence, or a continuing national need for exceptional accomplishment in sensitive, dangerous or creative areas, where the congressional decision to confer excepted service status is distinctly in the national interest. Such considerations and the need for finality in personnel action as opposed to a pro-

tracted internecine struggle outweigh any marginal protection afforded the employee by the judicial recognition of any property right created carelessly or unlawfully by rule or understanding. All of those special considerations are present here.

5. Summary judgment on this point may also be appropriate, for plaintiff has failed to demonstrate the existence of any property interest as the result of any rule or understanding.

persons. The possibility of future disclosure is unlikely, since the provisions of the Privacy Act of 1974, 5 U.S.C. § 552a(b) foreclose improper disclosure of information concerning plaintiff's discharge. The court will not assume that the FBI, notwithstanding statutes to the contrary, would reveal plaintiff's record to potential employers. *See, e.g., Walker, supra,* at 295; *Sims, supra,* at 863. There has been no disclosure of the circumstances surrounding plaintiff's discharge other than in the course of legal action.[6] The information concerned is held in a confidential file, so though derogatory or even untrue, it does not infringe any liberty interest of plaintiff. His assertion that the "mere firing" has damaged his reputation and has foreclosed employment opportunities as a law enforcement officer is not sufficient to establish a liberty interest triggering the requirements of due process. *See Roth, supra,* 408 U.S. at 575, 92 S.Ct. at 2708; *Bishop, supra,* 426 U.S. at 348, 96 S.Ct. at 2079.

## V.

The complaint names William H. Webster as a defendant but contains no allegations against him personally. He has no vicarious liability, and, therefore, the motion to dismiss as to him is GRANTED.

■ The FBI may not be sued *eo nomine. See Blackmar v. Guerre,* 342 U.S. 512, 514–15, 72 S.Ct. 410, 411, 96 L.Ed. 534 (1951). Therefore, the case against it is DISMISSED. The decisions in parts II, III and IV of the opinion assume an amendment of the complaint to name the United States.

## CONCLUSION

The complaint is DISMISSED as to William H. Webster and the FBI. It is DISMISSED as against the United States to the extent it alleges a deprivation of a property interest without due process of law for failure to state a claim. The motion of the United States to dismiss for want of jurisdiction of the claim for damages under 28 U.S.C. § 1346 is GRANTED.

6. *See* n. 1, *supra.*

Summary judgment is GRANTED the United States on the due process claim relating to the denial of a liberty interest. The Clerk of Court shall prepare a final decree in conformity with this opinion.