Arthur WICHERT, Plaintiff,

v.

Bruce D. WALTER, Jose Fuentes, Joseph Bonnaci, Charles Baldini, Carlos Perez, Louis Fusco, Genevieve Ghignone, Louis Merchesani, and Frank Clark, Defendants.

Civ. A. No. 85–1313.

United States District Court, D. New Jersey.

April 22, 1985.

Zazzali, Zazzali & Krol by Robert A. Fagella, Newark, N.J., for plaintiff.

Fischer, Kagan, Ascione & Zaretsky by Donald Scarini, Clifton, N.J., and Richard .DeLaRoche, Union City, N.J., for Union City Bd of Education.

## OPINION

SAROKIN, District Judge.

What distinguishes a democratic state from a totalitarian one is the freedom to speak and criticize the government and its various agencies without fear of government retaliation. It is difficult to envision any right more fundamental to the establishment and continuation of a free society.

In this case, a tenured school teacher, one having twenty-five years of service, is threatened with disciplinary action for having spoken out at a political rally in criticism of the local board of education. Indeed his statement condemned the transfer of another teacher to a distant educational outpost allegedly for political reasons.

If true, to utilize something as vital as teaching assignments as a means of punishing or rewarding political activity would be reprehensible enough, but to then punish one who purports to disclose such activity would be even a greater evil.

Plaintiff contends that the mere existence of charges against him constitutes a form of intimidation and chills his rights of free speech. The court agrees. Defendant argues that to enjoin the normal disciplinary machinery would constitute an unwarranted invasion of the administrative process by the court. However, the court is satisfied based upon the undisputed facts,

that no disciplinary proceeding or action is warranted or can even be tolerated under these circumstances. To permit the disciplinary machinery to grind on to its ultimate conclusion, whatever that might be, will, in the interim, intrude upon plaintiff's rights of free speech and presumably deter others who might otherwise be inclined to speak out.

Whether the Board of Education of Union City is or is not operating under a Siberian mentality is not now before the court, but rather whether someone can be disciplined and squelched for saying that it is. The court concludes that one cannot be for the following reasons.

### FACTS

Before the court is the motion of the plaintiff Arthur Wichert, brought by order to show cause, seeking declaratory and injunctive relief preventing the defendants from proceeding with tenure charges against him. Plaintiff is the Mayor of Union City and a tenured teacher in the Union City public schools for the past twenty-five years. Plaintiff is also a member and leader of "Your Operation Uplift" (Y.O.U.), which is a political organization in Union City. Defendants are the President of the Union City Board of Education, Bruce D. Walter, the Board itself, and its individual members.

According to plaintiff's unrebutted affidavit, Aff. of Arthur Wichert, 3/11/85, there are two major political factions in the City of Union City, represented by the Y.O.U. organization and an organization known as the Alliance Organization. Individuals associated with the Alliance Organization presently control the majority of the city's Board of Education. Plaintiff claims that the Board has harassed public school teachers who are members of its political opposition by taking adverse employment actions against them. Specifically, plaintiff claims that he was transferred last year from Union Hill High School, where he had worked for many years, to an elementary school much further distant from the City Hall of Union City. Plaintiff filed suit alleging the transfer was politically motivated, which suit is currently pending before the New Jersey Office of Administrative Law and the Commissioner of Education. In addition, plaintiff's affidavit reveals that on February 26, 1985, a Commissioner Dragona was also transferred from the high school to an elementary school much further distant from City Hall. Dragona is a prominent Y.O.U. supporter who had previously filed an administrative claim against the Board of Education for its refusal to reinstate him in his former position of principal. That claim was pending at the time of Dragona's transfer.

The action against plaintiff by the President of the Board, from which plaintiff seeks relief, arose as a result of certain comments made by plaintiff at a political rally on the same day that Dragona was transferred. Dragona's litigation and transfer were a major topic of concern at the rally, attended by 300 people, and plaintiff was approached by a reporter to give his opinion regarding Dragona's transfer. Plaintiff responded that "It was one of the most ridiculous, stupid and obvious political moves they have done." The comment was quoted the next day in the *Hudson Dispatch* in an article entitled "Dragona exiled far from City Hall." *See* Complaint, Exhibit A.

On March 8, 1985, defendant Bruce Walter, the President of the Board of Education, filed written tenure charges with the Secretary of the Union City Board of Education pursuant to N.J.Stat.Ann. § 18A:6–10 *et seq.* Specifically, Walter charged that Wichert had intentionally and with malice verbally assaulted the Board of Education (Charge I), that he intentionally and/or with a reckless disregard for the truth made false and/or misleading statements "touching upon the daily operation of the school system by the Union City Board of Education with the intent of misleading the public on this issue" (Charge II), and that he intentionally made "derogatory, false and/or inaccurate statements, the truth of which could be easily ascertained" (Charge III). These actions were alleged to exhibit "insubordination and misbehavior" and to constitute "unbecoming conduct touching upon the entire Union

City school system and the Board of Education of Union City." Walter demanded judgment against Wichert consisting of discharge from his tenured teaching position, reduction of his salary, and including "such other and further relief as the Commissioner deems in order and proper." The only specific comment of Wichert's referred to in connection with the charges was the statement quoted in the *Hudson Dispatch. See* Complaint, Exhibit A.

Under New Jersey's Tenured Employee Hearing Law, N.J.Stat.Ann. § 18A:6-10 *et seq.*, charges may be lodged against a tenured employee of a Board of Education by filing the charges in writing, along with a written statement of evidence under oath, with the Secretary of the Board. N.J.Stat. Ann. § 18A:6-11. After affording the employee an opportunity to respond, the Board of Education must consider the charges and the response and determine whether there is probable cause to support the charges, and whether the charges are sufficient to warrant either dismissal or reduction in salary. *Id.* If the Board determines that there is probable cause to support the charges, the Board must so notify the employee and forward the charges to the Commissioner of Education, together with a certification of determination as specified in N.J.A.C. 6:24-5.2. *Id.* Upon certification of charges to the Commissioner, the Board may suspend the employee involved with or without pay. N.J. Stat.Ann. § 18A:6-14. After certification, the employee is given the opportunity to file an Answer to the charges with the Commissioner. N.J.A.C. 6:24-5.3 & 6:24-1.4. The Complaint and Answer are then transferred to the Office of Administrative Law for a hearing before an Administrative Law Judge (ALJ). The ALJ renders an initial decision in the case at the conclusion of the hearing, which decision is forwarded to the Commissioner of Education. The Commissioner then has forty-five days within which to affirm, modify or reverse the ALJ's decision. N.J.A.C. 1:1-65(a). The Commissioner's action is final unless the case is appealed by either party to the State Board of Education within thirty days. N.J.A.C. 6:2-11.

By consent of the parties, the usual fifteen-day period for plaintiff to file a response to Walter's charges against him was suspended pending the court's resolution of the question of (1) whether the court is required to abstain from granting the plaintiff the relief he seeks because of the pending tenure charges and (2) if not, whether plaintiff is entitled to declaratory or preliminary injunctive relief on the grounds that his statements constituted a protected exercise of his first amendment right of free speech.

## DISCUSSION

In order to prevail on a motion for preliminary relief, a litigant must establish that (1) he is likely to prevail on the merits; (2) he would be irreparably injured without a grant of preliminary relief; (3) the grant of relief would not substantially harm other parties interested in, or affected by, the proceedings; and (4) relief would not adversely affect the public interest. *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 958-59 (3d Cir.1984). Where the preliminary relief requested is an injunction against state disciplinary proceedings, the litigant must also demonstrate that the threatened harm to him is egregious enough to surmount the jurisdictional hurdle of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.

### I. *Abstention*

*Younger v. Harris* made clear that equitable considerations generally counsel against enjoining a pending state criminal prosecution, even where the criminal charges are based on a statute which is possibly violative of the first amendment "on its face." *Younger* dictates that, when faced with such a request, a federal court ought ordinarily to abstain. The equitable considerations underpinning this rule are twofold. The first consideration is the "basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury

if denied equitable relief." The second is "the notion of 'comity', that is, a proper respect for state functions." *Id.* at 43–44, 91 S.Ct. at 750–751. In the light of these principles, the Supreme Court in *Younger* found that "the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' " so as to justify the disruption of legitimate state proceedings. *Id.* at 46, 91 S.Ct. at 751. The appropriate recourse for the accused is simply to set up and rely upon his first amendment defense in the state proceedings. *Id.* at 45, 91 S.Ct. at 751. In this way, the federal rights of the accused may be vindicated without unduly interfering with the legitimate activities of the states.

The general rule announced in *Younger* assumed the *bona fides* of state officials, however. The *Younger* court carefully distinguished its earlier decision in *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), in which it had approved federal intervention in an ongoing state prosecution. In *Dombrowski*, the *Younger* Court noted,

> the threats to enforce the statutes against appellants [were] not made with any expectation of securing valid convictions, but rather [were] part of a plan to employ arrests, seizures, and threats of prosecutions under color of the statutes to harass appellants and discourage them and their supporters from asserting and attempting to vindicate the constitutional rights of Negro citizens of Louisiana.

*Younger*, 401 U.S. at 48, 91 S.Ct. at 752, *quoting Dombrowski*, 380 U.S. at 482, 85 S.Ct. at 1118. The Court found that the factual context of the prosecutions in *Dombrowski* "sufficiently establish[ed] the kind of irreparable injury, above and beyond that associated with the defense of a single prosecution brought in good faith, that had always been considered sufficient to justify federal intervention." *Younger*, 401 U.S.

at 48, 91 S.Ct. at 752. Thus, the Court in *Younger* preserved an exception to the general equitable rule against enjoining state criminal prosecutions in cases involving "bad faith and harassment" or other "extraordinary circumstances." *Id.* at 53, 91 S.Ct. at 755.

The equitable doctrine of *Younger*, restricting federal interference with ongoing state proceedings, has since been extended to encompass any noncriminal judicial proceedings "when important state interests are involved." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982) (attorney disciplinary proceedings); *see also Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (proceedings to terminate parental rights); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (proceedings to recover welfare payments); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (contempt proceedings); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (proceeding to enforce nuisance judgment). The Third Circuit has also explicitly ruled that *Younger* is applicable in the context of nonjudicial disciplinary proceedings against tenured teachers under the very law which defendants invoke here, N.J.Stat.Ann. § 18A:6–10 *et seq.* *See Williams v. Red Bank Board of Education*, 662 F.2d 1008 (3d Cir.1981).[1] Because the practical effect of declaratory relief is ordinarily "virtually identical" to that of an injunction, *Younger* has been held to bar declaratory relief in the face of ongoing state proceedings, in addition to barring injunctive relief. *Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971). The doctrine does not bar declaratory or injunctive relief where no state proceeding has yet been instituted, however. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39

---

1. Notably, the Third Circuit has refused to extend *Younger* to civil disputes where the state is not a party, notwithstanding assertions of a strong state interest in the outcome. *Johnson v. Kelly*, 583 F.2d 1242 (3d Cir.1978). In *Johnson*, the court observed that "[i]n extending the con-

tours of the *Younger* abstention doctrine, based on notions of comity and federalism, it must be recognized that it is an 'extraordinary and narrow exception' to a district court's duty to decide cases within its jurisdiction." *Id.* at 1250.

L.Ed.2d 505 (1974); *Doran v. Salem Inn,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). As a threshold matter, therefore, the court must determine whether it is barred by the policies underlying *Younger v. Harris* from entertaining the plaintiff's application for relief.

■ The plaintiff makes two arguments as to why *Younger* does not require abstention in this case. First, he claims that the teacher tenure proceedings against him have not yet commenced because the tenure charges have not yet been certified. This argument need not detain the court, however. Plaintiff relies on *Steffel v. Thompson, supra,* and *Doran v. Salem Inn, supra.* In both of these cases, the Court merely held that abstention was not required where state proceedings had not been instituted. Neither case supports the proposition that a tenure proceeding is not "instituted" until the certification of charges. Where charges have been filed, triggering the requirement that the plaintiff answer within a specified time period, the court concludes that the adverse tenure proceeding, though still in its incipient stages, has been commenced. The concerns of equity and comity underlying the *Younger* doctrine are no less potent when charges have been filed than when they have been certified.

Plaintiff's second argument is more convincing, however. Plaintiff argues that the "bad faith and harassment" exception to *Younger* is applicable here in light of the surrounding circumstances, including the school board's pattern of alleged politically motivated harassment. In view of the undisputed evidence, the court agrees.

■ A finding of bad faith under *Younger* requires evidence that the charges against the plaintiff were instituted with "no genuine expectation" of their eventual success, but only to discourage the exercise of the plaintiff's protected rights. *Allee v. Medrano,* 416 U.S. 802, 819, 94 S.Ct. 2191, 2202, 40 L.Ed.2d 566 (1974); *see also Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 676, 27 L.Ed.2d 701 (1971); *Central Avenue News, Inc. v. City of Minot, N.D.,* 651 F.2d 565, 570 (8th Cir.1981) ("gravamen of bad faith prosecution is the lack of a reasonable expectation that [a] valid conviction[ ] will result"); *Williams v. Red Bank Board of Education,* 662 F.2d at 1022 n. 14. Other courts have found bad faith where prosecutors have instituted charges in violation of a prior immunity agreement, *Rowe v. Griffin,* 676 F.2d 524 (11th Cir.1982); where a prosecutor has pursued highly questionable charges against the plaintiff apparently for the sole purpose of gaining publicity for himself, *Shaw v. Garrison,* 467 F.2d 113 (5th Cir.), *cert. denied,* 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972); where a prosecution is motivated by a purpose to retaliate for or to deter the filing of a civil suit against state officers, *Wilson v. Thompson,* 593 F.2d 1375 (5th Cir.1979); and, specifically, where a prosecution has been instituted to harass and punish the federal plaintiffs for having exercised their first amendment rights in criticizing public officials. *Fitzgerald v. Peek,* 636 F.2d 943 (5th Cir.) (per curiam), *cert. denied,* 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981); *see also Herz v. Degnan,* 648 F.2d 201, 209–10 (3d Cir.1981) (state Attorney General's institution of license revocation proceeding on grounds for which no authority existed strongly suggested that "bad faith" exception to *Younger* principle would apply, if *Younger* were relevant to proceeding in question); *Bishop v. State Bar of Texas,* 736 F.2d 292 (5th Cir.1984); *Heimbach v. Village of Lyons,* 597 F.2d 344, 347 (2d Cir.1979); *Timmerman v. Brown,* 528 F.2d 811 (4th Cir.1975). The threat of multiple prosecutions may be additional evidence of bad faith, *see, e.g., Krahm v. Graham,* 461 F.2d 703 (9th Cir. 1972), but is not inevitably required to establish bad faith. *Fitzgerald v. Peek,* 636 F.2d at 944; *Wilson v. Thompson,* 593 F.2d at 1381. An injunction may also issue to enjoin consideration of charges by a demonstrably biased tribunal. *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973).

■ In this case, the context in which the charges were brought, and their underlying lack of merit, convinces the court that

they were brought only for the purpose of harassment and retaliation, with no hope of eventual success. Plaintiff's affidavit regarding the political motivation of Walter's action and the Board's other recent moves is unrefuted. It describes a clear pattern of adverse political actions taken against vocal members of Y.O.U., the Board's political opponents. Moreover, there is evidence that Walter's action against Wichert was particularly fraught with political implications at the time that it was taken, given that Y.O.U. and the Alliance were apparently to be pitted against one another in an upcoming local election. Plaintiff's Brief at 11.

Plaintiff has been a teacher in the Union City school system for twenty-five years and has attained public recognition as Mayor. There is no indication that any other disciplinary action has ever been taken or contemplated against him by past school boards. Nor is there any suggestion in the record, apart from Walter's complaint, that plaintiff is unfit as a teacher. The complaint itself lists no charges other than those stemming from Wichert's comments at the political rally. It contains no claim that Wichert is unfit as a teacher on any ground other than the claims based on his political speech. *Cf., Williams v. Red Bank Board of Education,* 662 F.2d at 1010 (charges against teacher in tenure proceeding included striking and publicly humiliating pupils, as well as making "racist and anti-Semitic remarks" at public meeting). Most important, as the court will elaborate below, the charges against Wichert, based solely on his political speech, are patently meritless and should have been recognized as such by the School Board: Wichert's comments at the rally

were clearly and without question protected first amendment speech.

In sum, the court finds strong evidence of bad faith and political motivation in the facts which are unrefuted in the record before it. This evidence indicates not only that the charges were filed for improper reasons, but also that at least the first tribunal before which these charges will be considered, the Board of Education of Union City, bears the taint of bias against the plaintiff. Under these circumstances, nothing requires the court to defer to the state proceedings until the plaintiff's case eventually finds its way to an unbiased tribunal within the state system. *Cf., Gibson v. Berryhill,* 411 U.S. at 577, 93 S.Ct. at 1697 (fact that judicial review would eventually be forthcoming did not require deference to state administrative board found incompetent by reason of bias). In light of the evidence of bad faith and bias, the court finds that it is not barred from issuing the requested relief. *Cf., Fitzgerald v. Peek,* 636 F.2d 943; *Shaw v. Garrison,* 467 F.2d 113; *Gibson v. Berryhill, supra.*[2]

II. *The Merits of Plaintiff's Application*

■ There is no question that public school teachers, like other public employees, "may [not] constitutionally be compelled to relinquish the first amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public school in which they work." *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). *See also Connick v. Myers,* 461

---

**2.** The court notes that, while a finding of bad faith would ordinarily be more appropriately made after a hearing on the issue, the defendants have not requested a hearing and have submitted no factual defense on the issue of bad faith. Moreover, even apart from the factual context in which the charges were brought, as noted, the objective validity of plaintiff's first amendment defense to the outstanding charges is by itself a powerful indicator of the defendants' bad faith in pursuing these charges. *Cf., Shaw v. Garrison,* 467 F.2d 113 (prosecutor's persistence in pursuing questionable perjury

charges was in bad faith). While the strength of the plaintiff's first amendment claim does not establish bad faith as a matter of law, *Williams v. Red Bank Board of Education,* 662 F.2d at 1022 n. 14, it strongly corroborates the plaintiff's allegations of the defendants' improper motivation. *Cf., id.,* 662 F.2d at 1012 (district court was correct in finding that bad faith exception did not apply to *Younger* where plaintiff teacher did not allege bad faith on the part of school board in instituting disciplinary proceedings).

U.S. 138, 144–45, 103 S.Ct. 1684, 1688–89, 75 L.Ed.2d 708 (1983); *Robb v. City of Philadelphia*, 733 F.2d 286, 295 (3d Cir. 1984) (state could not deny public employment to individual on basis of exercise of first amendment rights), *citing Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (public employee, with or without contractual right to retain job, cannot be dismissed for engaging in protected speech). The free speech rights of public employees may be limited only where required due to "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1735.

The two leading Supreme Court cases in the area are *Pickering, supra*, and *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708.[3] In *Pickering*, the plaintiff teacher had been dismissed from his position by the Will County, Illinois Board of Education for writing a letter to the editor of the local newspaper which was critical of the Board and the district superintendent of schools in revenue matters. The letter accused the defendant officials of having a " 'stop at nothing' attitude," of making threats and "insult[ing]" voters, of "neglecting the wants of teachers" and of "totalitarianism." Appendix to the Opinion of the Court, *Id.* 391 U.S. at 575–78, 88 S.Ct. at 1738–40. The Court found that plaintiff's statements directed at the Board and superintendent could not be *per se* harmful to the operation of the schools because the interests of the schools and those of the Board were not necessarily identical. In addition, the statements were held not to threaten either the maintenance of discipline by supervisors or harmony among Pickering's co-workers, two legitimate concerns of the state, because Pickering's "employment relationships with the Board and, to a somewhat lesser extent, with the superintendent are not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." *Id.* at 570, 88 S.Ct. at 1735. Finally, and most important, the Court found that plaintiff's letter dealt with a matter of public concern. Given these circumstances, Pickering's statements could not "furnish the basis for his dismissal from public employment ... absent proof of false statements knowingly and recklessly made." *Id.* at 574, 88 S.Ct. at 1738. Even the fact that some of Pickering's specific statements were false as a result of his good faith error did not deter the Court from upholding Pickering's right to have made them.

*Connick* did not alter the basic framework of *Pickering*, but merely amplified and clarified the various factors to be considered. In *Connick*, the Court emphasized that a public employee's speech must have touched upon a matter of public concern in order to justify review in a federal court of an adverse personnel decision on the basis of that speech. 461 U.S. at 146–47, 103 S.Ct. at 1689–90. It held that the question of "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement...." *Id.* at 148, 103 S.Ct. at 1690. The Court suggested that an employee's statement raises questions of public importance *per se* where the employee is seeking to bring to light "actual or potential wrongdoing or breach of public trust" by government officials, or to publicize the fact that a public agency is "not discharging its governmental responsibilities." *Id.* at 148, 103 S.Ct. at 1690. The Court specifically held that a statement regarding an employer's efforts to coerce employees for political reasons also raises issues of public concern. *Id.* at 149, 103 S.Ct. at 1691, *citing Branti v. Finkel*, 445 U.S. 507, 100 S.Ct.

---

**3.** Because there is no dispute in this case that the charges against plaintiff stem from his speech, and only from his speech, the court does not apply the analysis prescribed in *Mount Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), for determining whether an employee's termination is a result of his protected conduct. *Cf., Czurlanis v. Albanese*, 721 F.2d 98, 103 (3d Cir.1983) (where record was clear that plaintiff's suspension was direct result of speech at public meeting of county Board of Freeholders, court need focus only on whether speech was protected under *Pickering* and *Connick*).

1287, 63 L.Ed.2d 574 (1980) (public official could not dismiss employees on basis of political affiliation where such affiliation was not an appropriate requirement for performance of the job involved); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (public employee could not be dismissed for failing to submit to political coercion).

Once the public importance of an employee's statement is established, according to *Connick,* the court must balance the employee's speech interest against the public employer's interest in "effective and efficient fulfillment of its responsibilities to the public." *Id.* 461 U.S. at 150, 103 S.Ct. at 1692. The Court deemed the "manner, time and place" of the speech activity to be relevant in the calculus, including whether the speech occurred in the place of employment, or outside, and whether it arose in the context of an employment dispute involving application of a challenged policy to the speaker, or in a broader context. *Id.* at 153, 103 S.Ct. at 1693. The Court explicitly distinguished the facts of *Connick,* involving a disgruntled employee's distribution of an employee grievance questionnaire, at the office and on office time, from instances in which the employee's speech "more substantially involved matters of public concern," and transpired on the employee's own time. *Id.* at 152, 153 n. 13, 103 S.Ct. at 1692, 1693 n. 13.

Nothing in *Connick* in any way challenges or questions the Court's holding in *Pickering,* therefore; if anything, *Connick* reiterates the holding in *Pickering* that a public employee cannot be terminated for publicly criticizing superiors with whom he does not work directly, where the criticism involves a question of public concern. It is inescapable to the court, and should have been equally inescapable to the Board, that the facts of the instant case are on all fours with those of *Pickering* and implicate none of the Court's concerns in *Connick.*

▪ First of all, like Pickering's, plaintiff's statements were addressed to a matter of general concern, indeed, a matter of such concern that it was a major topic among the 300 people gathered for the political rally in question, and generated a banner headline in the *Hudson Dispatch* the following day. *Cf., Anderson v. Central Point School District No. 6,* 746 F.2d 505 (9th Cir.1984) (teacher-coach's letter to school board concerning athletic policies addressed matter of public concern and were protected under first amendment, where school athletic policies had become focus of public debate); *Bowman v. Pulaski County Special School District,* 723 F.2d 640 (8th Cir.1983) (statements by assistant coaches regarding corporal punishment imposed on students by head coach in context of public debate constituted protected speech). Plaintiff's comments were aimed at exposing the Board's abuse of its powers for political reasons. *Cf., O'Brien v. Town of Caledonia,* 748 F.2d 403 (7th Cir.1984) (police officer's discussions with judicial officials and response to questions from media charging that police department's handling of citations was politically motivated constituted speech protected under first amendment); [4] *see also Brockell v. Norton,* 732 F.2d 664 (8th Cir.1984) (first amendment protected police dispatcher's disclosures of fellow employee's misconduct); *Czurlanis v. Albanese,* 721 F.2d 98 (3d Cir.1983) (first amendment protected county employee's allegations of inefficiency, waste and possible fraud in Division of Motor Vehicles); *Trotman v. Board of Trustees of Lincoln University,* 635 F.2d 216, 225 (3d Cir.), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981) (fact that faculty criticism of university's retrenchment policy fell within scope of first amendment protections was "too evident to require any discussion").

Second, like Pickering's, plaintiff's speech occurred off school grounds and on plaintiff's own time. *Cf., Czurlanis, supra* (statements at public meeting open to all citizens was protected); *Waters v. Chaffin,* 684 F.2d 833 (11th Cir.1982) (police officer's disparaging words about police

---

**4.** In *O'Brien,* the Seventh Circuit upheld the district court's order enjoining disciplinary proceedings against the plaintiff police officer on the basis of this speech.

chief spoken after he had left work, was out of uniform and out of department's jurisdiction was protected speech). Like Pickering's, plaintiff's comments were aimed at the Board of Education, with which he does not work directly, at least in his capacity as a teacher. *Cf., Czurlanis,* 721 F.2d at 106–7 (mechanic's comments aimed at county administrators who did not supervise him directly would not disrupt functioning of public agency), *citing McGee v. South Pemiscot School District,* 712 F.2d 339, 342 (8th Cir.1983) (teacher's criticism of school policies aimed at school board would not affect his ability to function given that school board members were not teacher's immediate supervisors); *cf., Sprague v. Fitzpatrick,* 546 F.2d 560 (3d Cir.), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977) (first assistant district attorney could constitutionally be dismissed for charging District Attorney with dishonesty because of confidential relationship between the two). As in *Pickering,* there is no evidence here that plaintiff's effectiveness as a teacher has been impaired as a result of his comments, *cf., Swilley v. Alexander,* 629 F.2d 1018, 1021 (5th Cir.1980) (court found no evidence that severe discipline or personality problems would arise because of teacher's criticism of principal, even if principal were plaintiff's immediate supervisor), nor is there any indication that plaintiff's comments, as opposed to the Board's actions themselves, will "materially and substantially interfere with the requirement of appropriate discipline in the operation of the [school system]." *Trotman,* 635 F.2d at 230; *cf., Czurlanis,* 721 F.2d at 107 (evidence indicated that any disruption of the Division of Motor Vehicles was "primarily the result, not of the plaintiff's exercise of speech, but of his superiors' attempt to suppress it"); *see also Monsanto v. Quinn,* 674 F.2d 990, 997 (3d Cir.1982) (small amount of disruption caused by employee's writing and release of letters critical of public employer to news media did not tilt balance away from first amendment protection).

Finally, like Pickering's, plaintiff's statement could not be construed as knowingly or recklessly false, in Wichert's case, because they were chiefly expressions of opinion rather than statements of fact. In addition, there has never been any evidence submitted to indicate that any factual component of plaintiff's comments, *e.g.,* his allegations of political motivation, were not well founded. In any event, even if plaintiff's statements were mistaken, they fell within the purview of the first amendment. *Cf., Trotman,* 635 F.2d at 225–26 (fact that plaintiff's statement in telegram to governor accusing university president of being " 'inhumane', 'vicious', 'vindictive', and 'arrogant with power given to him by a weak Board' " might be "misguided or obstinate ... does not derogate from the status of the expressions as speech within the First Amendment"). As in *Pickering,* therefore, it is clear that plaintiff's comments cannot constitutionally form the basis of any disciplinary action against him.

Having established that *Younger* does not bar injunctive relief in this case because of the school board's evident bad faith, and that plaintiff's comments were protected first amendment speech, the other prongs of the test for preliminary relief simply follow. First of all, *Younger* establishes that a bad faith prosecution of an individual for exercising speech rights amounts to "irreparable injury" in the equitable sense. *See also Wilson v. Thompson,* 593 F.2d at 1381 (irreparable injury is established as matter of law where plaintiff demonstrates that state prosecution was brought in bad faith and for purposes of retaliating against exercise of protected right); *Shaw v. Garrison,* 467 F.2d at 120 (showing of bad faith or harassment is equivalent to showing of irreparable injury because of injury to federal right of freedom from bad faith prosecutions). Even beyond the irreparable injury caused by the continuance of a bad faith prosecution, however, is the irreparable chilling effect on the plaintiff's exercise of free speech during the pendency of the charges against him. *Pickering,* 391 U.S. at 574, 88 S.Ct. at 1737 ("threat of dismissal from public employment is ... a potent means of inhibiting speech"); *Columbus Education Ass'n v. Columbus City School District,*

623 F.2d 1155 (6th Cir.1980) (disciplinary actions had chilling effect on teacher's exercise of free speech); *McGill v. Board of Education,* 602 F.2d 774, 780 (7th Cir.1979) (same). The plaintiff is thus clearly entitled to the extraordinary relief sought here.

Finally, there is no countervailing public interest or interest of any third party which would militate against granting this relief. The state "by definition does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights." *Wilson v. Thompson,* 593 F.2d at 1383. In fact, the public interest lies instead in encouraging "free and unhindered debate in matters of public importance—the core value of the Speech Clause of the First Amendment," rather than in chilling debate. *Pickering,* 391 U.S. at 573, 88 S.Ct. at 1737. In addition, the court's analysis of the protected character of plaintiff's speech establishes that the school system has no substantial interest in prosecuting the tenure charges against plaintiff. Indeed, the only real interest of third parties in the prosecution of those charges is the Board's interest in retaliating against plaintiff and chilling his further speech. Manifestly, this is not an interest which deserves any protection in this court. In consideration of all of these factors, the court will enjoin the defendants from pursuing any further the charges pending against plaintiff.

## CONCLUSION

Any infringement upon free speech should be carefully scrutinized. Certainly efforts to quell disclosure of the use of an educational system for political purposes must be condemned. If indeed important decisions regarding teaching assignments are made to injure one's political enemies or to aid one's political allies, such activities require open debate free of the fear of retaliation or discipline. If the statements prove to be unfair, better their author be shown to be in error in public, rather than be punished in private.

## ORDER

This matter having been opened to the court by the plaintiff, Arthur Wichert, on the return date of an Order to Show Cause why the relief sought in the Complaint should not be granted; and the court having considered the briefs, affidavits and arguments of counsel; and for the reasons expressed in the Opinion of the court even dated herewith;

It is on this 22 day of April, 1985,

ORDERED that the speech of Arthur Wichert referred to in the charges filed against him by the defendant Bruce D. Walter, President of the Union City Board of Education, dated March 8, 1985, be and it hereby is declared to be speech protected by the first amendment to the United States Constitution which cannot constitutionally form the basis of any disciplinary action or tenure proceedings by defendants; and it is further

ORDERED that the defendants be and they hereby are preliminarily enjoined from taking any further action to prosecute the above-referenced charges against the plaintiff.